NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0179n.06

No. 08-5431

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 22, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,              )
                                         )
                                         )    ON APPEAL FROM THE
    v.                               )    UNITED STATES DISTRICT
                                         )    COURT FOR THE EASTERN
                                         )    DISTRICT OF TENNESSEE
GREGORY PHILLIPS,                        )
                                         )
    Defendant-Appellant.             )
                                         )

BEFORE: BATCHELDER, Chief Judge, and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

TARNOW, District Judge.

In the underlying case, Gregory Phillips ("Phillips") pleaded guilty to one count of engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c). The district court sentenced Phillips to 37 months' imprisonment, to be followed by a lifetime term of supervised release. Phillips completed his prison sentence and began serving his supervised release, but on February 20, 2008, Phillips' probation officer sought and obtained a warrant for Phillips' arrest based on allegations that Phillips had violated several standard and special conditions of supervision. The district court conducted an evidentiary hearing, took testimony from the probation officer, received evidence from counsel, and ultimately concluded that Phillips had violated the terms of his supervised release as alleged. At the sentencing phase, the court revoked Phillips' release and

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

sentenced him to 30 months' imprisonment, to be followed by an additional 20-year period of supervised release that included newly imposed conditions. Phillips objected that his sentence exceeded the applicable guidelines range, and filed a timely notice of appeal.

For the reasons stated below, we affirm the district court and deny Phillips' appeal.

## BACKGROUND

In August, 2001, Phillips traveled from the United States to Thailand to begin employment as a teacher at the American School of Bangkok,[1] where he taught until October, 2004. Between approximately May, 2004, and October 29, 2004, Phillips resided with a Thai child ("Ong"), who was between 13 and 16 years of age during that period of time.[2] While residing with the child, Phillips repeatedly engaged Ong in illicit sexual conduct and contact as defined by statute.

The record is not entirely clear as to the circumstances of Phillips' departure from Thailand, but during the revocation hearing, Phillips' probation officer testified that Phillips had reported "[leaving] Thailand in 2004 after the Thai police had begun searching for him for what is the basis

---

[1] In an interview conducted during the preparation of the Presentence Investigation Report ("PSIR"), Phillips explained that "when his probation ended in 2001 from a previous charge of Indecent Liberties with a Child, he still wanted to teach. He could no longer teach in the United States so he went to Thailand. [Phillips] reported that when he moved he knew nothing about the Thai language or culture."

[2] Phillips recounted that he met Ong's mother on the street, where she sold hot dogs. One day she had her son with her. Phillips became friendly with Ong's family, who asked Phillips several times to care for the child after Ong's mother lost her job. Phillips initially refused, but during 2002 and 2003, he paid Ong to tutor him in the Thai language. Phillips later opened a martial arts school and hired the family members to work for him. When Phillips closed the martial arts school in the spring of 2004, the whole family once again became unemployed. Ong had previously dropped out of school, but "[t]he family found a small tutoring school for Ong to go to that just happened to be across the street from where [Phillips] lived." Phillips assisted the family in enrolling Ong in the school, and paid the child's tuition. In June, 2004, Ong moved in with Phillips "because he was going to the school across the street." The living arrangement lasted until October 29, 2004.

of the instant offense." Phillips reported contacting a man he knew as "Dylan Thomas,"[3] whom Phillips had met while using a "BoyChat/Boy Lover" message board. At one time, "Thomas" had been the webmaster. When Phillips asked "Thomas" for help, "Thomas" invited Phillips to come to Mexico,[4] where Phillips then lived with "Thomas" for approximately 30 days. According to the probation officer's testimony, Phillips later "indicated that he knew that ["Thomas"] was someone who engaged in sex with young boys because there were little boys in and out of there all the time," and that although Phillips never witnessed any sexual interactions, he knew "Thomas" was having sex with the boys because, "[w]ell, if you live with somebody, you know what they're doing." "After things calmed down," Phillips returned to the United States. "Thomas" had asked Phillips to check on the status of "Thomas'" own outstanding warrants once Phillips returned to this country.

On December 7, 2004, Phillips was indicted on one count of engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c), and he was arrested the next day. On September 28, 2005, Phillips pled guilty to the single count with which he was charged. The district court sentenced Phillips to 37 months' imprisonment, to be followed by a lifetime term of supervised release. On August 15, 2007, Phillips completed his prison sentence and began serving his supervised release.

According to his probation officer, Phillips seemed to do well during the first few months of his supervision and had begun working as a paralegal in a Chattanooga law firm. However, on

---

[3] As it turned out, "Dylan Thomas" was a pseudonym used by Jon Schillaci, a convicted sex offender and a fugitive who was then listed as one of the FBI's "Top Ten Most Wanted."

[4] Phillips' probation officer reported: "he basically explained it, and it sounded like one of those movies where people are meeting and doing spy games. He said he had to go to a park in Guadalajara at four o'clock in the morning, wear certain things and that someone would approach him. He said this individual did approach him . . . and told him he was Dylan Thomas. They went back to where this individual was living."

December 11, 2007, the probation officer conducted an unannounced workplace visit, and learned that Phillips had been using his workplace computer to communicate with a personal friend in Thailand. Phillips said that, "to his knowledge," his friend was not a sex offender,[5] and he specifically denied having had any contact with Ong, his victim. According to the probation officer, Phillips "became agitated" after nearly an hour of discussion, exclaimed that he had abided by the conditions of his release, and asked the probation officer to "put it in writing." Indeed, the next day, the probation officer sent a letter to Phillips, "indicating [Phillips] was doing fine." The probation officer later testified that he sent the letter despite his reservations, because "[w]hen [he] left out of there on December 11th, [he] had a lot of questions [but he] had no evidence."

On December 19, 2007, the probation officer received a phone call from a Chattanooga-based FBI agent, who had been contacted by an attorney reporting that "Mr. Phillips had contacted [the attorney] about providing information on a Top Ten FBI fugitive who had been out of the country for years that they were looking for." The probation officer "advised [the FBI agent] that that was news to [him] because [he] had seen Mr. Phillips just about a week before that and that he had adamantly denied any contact with anybody he knew to be a felon." The FBI agent reported that the name of the fugitive was Jon Schillaci ("Schillaci"). The attorney had informed the FBI agent that Phillips was conditionally willing to provide information on Schillaci's whereabouts in Mexico, provided that Phillips would receive the posted reward money and that he would be taken off of supervised release. The probation officer testified that, as soon as the FBI agent disclosed this information, it was clear that Phillips had committed violations of his terms of supervision, because

---

[5] The probation officer testified that Phillips further elaborated that "the only people that he had had contact with who he knew to be felons, sex offenders or people who liked children since his release were the individuals that were in his treatment program[.]"

only eight days beforehand Phillips had adamantly maintained that he had not had contact with anybody he knew to be a felon.

The next day, December 20, 2007, Phillips was scheduled to appear at the Probation Office for a random drug screening. When Phillips reported to the office, the probation officer questioned him again on whether his friend ("Leo") in Thailand was a felon or a sex offender, and Phillips again said no. The probation officer instructed Phillips to e-mail Leo and ask explicitly if he was a convicted felon. The officer then advised Phillips of the federal law that makes it a crime to lie to a federal law enforcement officer during the execution of his or her duties, and repeated the question: "[s]ince your release have you had any contact with anybody that you know to be a felon?" Phillips "adamantly denied that he had," and did not mention Schillaci. Phillips was advised that he needed to disclose his "polygraph risk list,"[6] which he submitted on December 23 along with a letter in which he offered to have no more contact with Leo.

On December 26, a letter from Phillips arrived at the Probation Office, indicating that on December 21, Phillips had met with the FBI agent regarding "an ongoing investigation," although the letter did not specify the subject of the investigation. Phillips' probation officer read the letter when he returned from the holiday break, on January 2. The probation officer testified that Phillips had never previously disclosed the FBI investigation in any other way, and that it did not appear on any of the monthly reports he had submitted to the Probation Office.

On January 4, 2008, two probation officers visited Phillips' then-residence at River Hills Apartments in Chattanooga to verify whether Phillips had complied with the "third party disclosure" condition that required him to report his status as a sex offender to anyone with whom he worked,

---

[6] The Probation Office requires every supervised sex offender "to keep a list of any known violations, possible violations, or risky or questionable behavior. And they are to do that so that when they go to their polygraphs, they can disclose this information."

or from whom he leased an apartment. The general manager of the complex was unaware of Phillips' status. However, an ex-assistant manager who still lived at the complex informed the officers that Phillips had disclosed to her *not* that "he was on supervised release, probation, for engaging in illicit conduct with a minor in foreign places," but that his probation was for "having underage sex with a female prostitute in Thailand," and that "he made her think that it was not a serious offense and that he thought that this individual was over 18."

On January 9, 2008, the probation officer sent Phillips a letter instructing him to submit a revised and complete polygraph list by January 18, and to come to the office on January 28 to discuss probation violations. According to the probation officer, the primary "purpose of that meeting was to address the violations" that he knew of, those being Phillips' contact with a felon and his failure to disclose that contact in any of his numerous meetings and reports. Phillips timely submitted his revised polygraph list, in which Phillips disclosed that, in September, 2007, he had e-mail contact with someone whom he knew to be a fugitive, and that "he was going to contact somebody to see how to get that information to the government."

On January 28, 2008, Phillips appeared for his meeting at the Probation Office. He reported that he had been to treatment two days prior, that he "finally understood that truthfulness meant full disclosure," and he admitted having failed to disclose some things that he should have. Phillips then stated that in September, 2007, shortly after his release from incarceration, he had initiated e-mail contact with the man he knew as "Dylan Thomas" "to thank him for harboring him when he had left Thailand." Phillips maintained that he did not know the man's true identity, and that he did not know he was wanted by the FBI. Also during that meeting, Phillips disclosed that he had had contact with two other individuals he had met through the "BoyChat/Boy Lover" message board: Leo (his friend in Thailand), and another man ("Richard"). Phillips had communicated with those

individuals, and with the fugitive, through a "Hushmail.com" e-mail address. The probation officer's research showed that "Hushmail.com" is a Canadian-based company that specializes in encrypted e-mail and advertises that foreign law enforcement officials are required to go through the Canadian Department of State in order to subpoena information about any of its e-mail accounts. Phillips had previously provided the probation officer with only one e-mail address, and had not disclosed his work e-mail address or three other private e-mail addresses.

After the meeting, Phillips and the probation officer went to Phillips' residence so that the probation officer could review Phillips' internet history pursuant to the search condition of Phillips' release. The internet security protocols had been set to delete Phillips' browsing history upon system shutdown. In reviewing some of Phillips' physical files, the probation officer discovered a letter that Phillips had mailed to Thailand on September 28, 2007, and which displayed a return address under the name of a friend in Athens, Georgia. The probation officer concluded that Phillips had failed to disclose a mailing address, as he was required to do on his monthly report to the Probation Office. When the probation officer asked Phillips why he had failed to disclose all of his e-mail and mailing addresses, Phillips answered that he hadn't previously understood that "truthfulness" required full disclosure.

On February 1, 2008, Phillips arrived for a scheduled polygraph examination. In answering a set of pre-polygraph questions, Phillips made several disclosures that the probation officer deemed inconsistent with Phillips' prior statements, namely that, since his supervision began on August 17, 2007: Phillips had indeed contacted a fugitive who was a convicted felon; he had exchanged at least three e-mails with the fugitive by the end of September, 2007; he had spoken with his friends Richard and Leo about Ong, although he had never contacted Ong directly; he knew Leo to be a

convicted felon who had engaged in sexual activity with children, and; he had knowingly misled and made misrepresentations to his probation officer.

On February 11, 2008, Phillips returned to the Probation Office to discuss the polygraph results.[7] At that time, Phillips' probation officer decided to request that the district court hold Phillips to be in violation of the terms of his supervised release.

On February 13, 2008, Phillips' probation officer sought and successfully obtained a warrant for Phillips' arrest based on the alleged violations of several standard and special conditions of his supervised release. The district court conducted an evidentiary hearing, heard testimony from the probation officer, and ultimately concluded that Phillips had violated the terms of his supervised release as alleged.

The government's petition calculated Phillips' revocation guideline range at 3-9 months' incarceration, with a statutory maximum of 3 years. At the sentencing phase of the revocation hearing, Phillips' attorney urged the district court to stay within the guideline range, arguing that Phillips' violations were all "technical" and did not warrant an extensive term in custody, and that there had been no indication that he had reoffended or that he was a risk to the community. Phillips' attorney added that "he did provide information to the FBI on one of the top ten offenders and they have used that information to try to find [the fugitive]." When the court interjected that Phillips had been attempting to broker a deal, his attorney responded that ultimately Phillips communicated the information even though no such deal had been reached. The government urged a term of at least 30 months' imprisonment, arguing that Phillips' collective activities, including his "technical" violations of the terms of his release, showed a "pattern of manipulation," and stated that it was the

---

[7] At that meeting, Phillips added that he had had e-mail contact with a fourth person ("Lance"), whom he had asked "to check on a short story that he had submitted prior to when he was incarcerated."

government's belief that Phillips established contact with Schillaci expressly for the purpose of securing a release from probation. The government expressed "no doubt" that, in his dealings with Schillaci, "[Phillips] knew exactly who he was dealing with and exactly what type of person it was."

Noting that the court had considered the relevant factors set forth in 18 U.S.C. § 3553(a), including the recommended sentence, the sentencing judge declared his belief that Phillips, as "a two-time convicted child sexual offender," posed a clear and present danger to the community, and that Phillips required the intensive sex offender treatment available through the Bureau of Prisons. The district court imposed a sentence of 30 months' imprisonment, followed by 20 years of supervised release to include three special conditions requested by the government. Namely, the conditions prohibit Phillips from owning, using or possessing a computer or any other electronic device with internet capability without the written permission of the probation officer; Phillips may not access or attempt to access the internet by any means without the approval of his probation officer, and; Phillips may not utilize e-mail in any form without the approval of his probation officer.

Phillips now appeals his sentence, including the district court's finding that he violated the terms of his supervised release.

## DISCUSSION

This Court reviews for abuse of discretion the district court's revocation of Phillips' supervised release. *United States v. Lewis*, 498 F.3d 393, 395 (6th Cir. 2007).

A sentence imposed after the revocation of release is reviewed under the same "reasonableness" standard as a sentence imposed upon a conviction. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). The reasonableness inquiry begins with a determination as to whether the sentence was procedurally reasonable, and then proceeds to an analysis of whether the sentence

was substantively reasonable. *Id*. at 578 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Here, Phillips challenges only the substantive reasonableness of his sentence.

Finally, the Court reviews a district court's imposition of a special condition of supervised release only for abuse of discretion. *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997).

**I.    The district court did not abuse its discretion by finding that the government had shown by a preponderance of the evidence that Phillips violated the terms of his supervised release.**

On appeal, Phillips notes that the government's petition alleged nine different violations of a combination of six Standard and Special Conditions of his release, and that the district court found proof of each violation. The Court's analysis can be streamlined[8] by focusing on the arguments dealing with "Violation II." Violation II of the probation officer's Petition for Warrant alleged that, through Phillips' communications with Jon Schillaci, Phillips had violated several terms of his release, specifically: Standard Condition #9 ("The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer"); Standard Condition #2 ("The defendant shall submit a truthful and complete written report within the first five days of each month"); and Standard Condition #3 ("The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer").

_____

[8] As the government observes, not every violation must have been proven in order to for this Court to sustain the revocation of Phillips' release: "so long as the United States proved at least one violation of defendant's supervised release conditions, the revocation judgment should be affirmed." On the issue of the district court's finding of a violation, the government focuses entirely on Phillips' dealings with Schillaci, to the exclusion of any discussion of the other violations alleged in the original Petition. Indeed, it was clear from the probation officer's testimony at the revocation hearing that it was the phone call from the FBI agent that triggered the scrutiny of Phillips' compliance. At the revocation hearing, Phillips' attorney elicited the probation officer's agreement that the phone call was "a big reason why we are here, because clearly Mr. Schillaci, as we know, is a felon and was on the FBI's Most Wanted List."

Phillips asserts that the district court abused its discretion by finding this violation by a preponderance of the evidence. He argues that it is clear from the uncontroverted proof that he had contact only with a person he knew as "Dylan Thomas," and that such contact ended by the end of September, 2007. According to Phillips, "[w]hen he learned that he had unwittingly had contact with this fugitive," Phillips contacted the FBI through counsel to provide information on him. Phillips reasons that in September, 2007, because "he didn't know that the person [he knew as Dylan Thomas] had a criminal record," he truthfully and completely reported that he had not had such contact. Phillips further reasons that *after* September, 2007, when Schillaci's identity became clear, Phillips no longer associated with Schillaci, and thus "any negative response [to his probation officer's questioning] in the subsequent months would not be false."

The government responds that:

[Phillips] admitted that he contacted Schillaci in September 2007 while on supervised release, thereby violating the condition of his release that barred all contact with known felons and sex offenders. Although [Phillips] claimed that he knew Schillaci only as Dylan Thomas, [Phillips] admitted that he knew Schillaci/Thomas to be a sex offender before exchanging e-mails with him in September 2007.

The government points out that Phillips admitted to his probation officer that his September, 2007, contact with Schillaci was to thank Schillaci for hosting Phillips in Mexico in 2004, thereby shielding him from law enforcement when Phillips left Thailand. Furthermore, the government argues that Phillips' failure at any time to report his contact with Schillaci to his probation officer or treatment provider was a violation of Phillips' obligation to provide complete and truthful information to those individuals as required by his conditions of release.

On the record at the revocation hearing, the district court made only a general finding: "that the defendant has committed violations of his conditions of supervised release. Therefore, the [c]ourt

revokes the defendant's supervised release." However, the post-hearing Judgment contains a statement of the evidence upon which the court relied in reaching its conclusion. As to Violation II, the Judgment reads in its entirety:

> On January 28, defendant admitted initiating e-mail contact by the end of September 2007 with a convicted sex offender and fugitive named Jon Schillaci whom he had previously met through a networking website for men who engage in sexual activity with boys under the age of eighteen (18).
>
> On October 1, 2007, defendant falsified his monthly report form for September 2007, by answering "no" to the question of whether he had contact with anyone having a criminal record. In addition, on December 11, 2007, and December 20, 2007, defendant was repeatedly asked by probation officers if he had any contact of any type with someone he knew to be a felon or sex offender since his TSR began. Defendant repeatedly answered "no." However, on January 28, 2008, defendant admitted to his probation officer that he had knowingly lied about his contact with Jon Schillaci.

Upon review, it appears that there existed adequate record evidence to support the district court's finding that Phillips had violated the terms of his release as alleged in Violation II. Specifically, despite Phillips' protestations that he did not initially know Schillaci's true identity or that Schillaci was a felon, Phillips was explicitly barred from "associat[ing] with any persons engaged in criminal activity." According to Phillips' probation officer, Phillips "indicated that he knew that [Thomas/Schillaci] was someone who engaged in sex with young boys because there were little boys in and out of there all the time," and that although Phillips never witnessed any sexual interactions when he lived with Schillaci in 2004, he knew Thomas/Schillaci was having sex with the boys because, "[w]ell, if you live with somebody, you know what they're doing." This establishes Phillips' knowledge that, regardless of the identity by which Thomas/Schillaci was known to Phillips, Schillaci was clearly a person who "engaged in criminal activity." Thus, when Phillips initiated communication with Thomas/Schillaci in September, 2007, that contact constituted

a violation of his conditions of release, as did Phillips' failure to report the contact to his probation officer at any time before his probation officer was contacted by the FBI.

Reviewing for abuse of discretion, and applying only a preponderance of the evidence standard, the Court finds that record evidence sufficiently supports the district court's ruling in this case. Therefore, the Court **AFFIRMS** the district court's finding that Phillips violated the conditions of his supervised release as charged in Violation II of the probation officer's Petition.

**II.     The district court did not deny Phillips due process by providing only the Judgment as a written statement of the evidence relied upon and the reasons for revoking supervised release.**

To meet minimum standards of due process, a court revoking supervised release must provide "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Here, the district court filed a five-page written revocation Judgment reciting Phillips' alleged violations and the evidence establishing those violations. However, Phillips argues that the Judgment is insufficient to satisfy due process.

This Court has previously held that the transcript of a revocation proceeding constitutes the functional equivalent of a written statement, and thus comports with standards of due process. *United States v. Gilbert*, 990 F.2d 916, 917 (6th Cir. 1993). As the *Gilbert* Court stated,

> The Federal District Courts are courts of record since all hearings are transcribed verbatim; to require a judge to copy or paraphrase the transcript of his findings in the wake of a revocation hearing would elevate form over substance and do absolutely nothing to further secure the rights of those on supervised release.

*Id*.

Therefore, the Court **HOLDS** that the district court did not violate Phillips' due process rights by declining to issue a written statement separate from the Judgment based on the transcribed revocation hearing in this case.

**III. Upon revocation of Phillips' supervised release, the district court imposed a substantively reasonable sentence, and therefore did not abuse its discretion.**

Phillips challenges only the substantive reasonableness of his sentence. A sentence is substantively unreasonable if the district court imposes a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factors. *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

The applicable statute provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). The sentencing court must consider, among other factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .
>
> *Id.*

Phillips urges the Court to consider the totality of the circumstances in his case, including the extent of his sentence's variance from the guideline range. Here, although the guideline range for Phillips' criminal history category was 3-9 months, Phillips was sentenced to the term of 30 months' incarceration that was requested by the Government. The government now reiterates that request, adding that the district court's sentence determination must be regarded with deference.

In general, "a major departure [from the sentencing guidelines] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. However, if a sentence falls outside of the guidelines range,

> The [appellate] court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Id.* at 51.

Here, the sentencing judge did not engage in an item-by-item application of the sentencing factors set forth in § 3553(a). However, he explicitly confirmed that he had considered "the nature and circumstances of the offense, the history and characteristics of the defendant and policy statements, as well as the other factors listed in 18 U.S.C. § 3553(a), including the recommended sentence in this case." He then elaborated on the district court's reasons for imposing a 30-month term of imprisonment:

> However, considering that the defendant is a two-time convicted child sexual offender, who poses a danger to the community – and I underline that, Mr. Phillips. I think you are a clear and present danger to the community, particularly the children of the community – that the defendant has violated his supervised release conditions almost immediately after his release from the Bureau of Prisons' custody and that he is in need of intensive sex offender treatment available through the Bureau of Prisons Sex Offender Treatment Program.

Both at sentencing and in his appellate brief, Phillips protested the sentence being beyond the guideline range, but he has not offered any specific objections to the court's reasoning. The 30-month sentence of imprisonment exceeded the applicable 3-9 month guideline range, but it did not closely approach the 36-month statutory maximum.

The Court finds that, here, the "sentencing judge's statement of reasons was brief but legally sufficient." *See Rita v. United States*, 551 U.S. 338, 358 (2007). A lesser sentence may also have been substantively reasonable, but that does not compel reversal. Therefore, recognizing that "the sentencing judge ha[d] access to, and greater familiarity with, the individual case and the individual

defendant," and according appropriate deference to the determination of the district court, the Court

**AFFIRMS** the 30-month term of imprisonment imposed in this case. *See id.* at 357.

**IV.     Because the terms of supervised release imposed by the district court did not include unconstitutionally vague or overbroad conditions, there has been no violation of Phillips' due process rights.**

At sentencing, in addition to the sentence of 30 months' imprisonment, the district court imposed 20 years of supervised release, which included three special conditions requested by the government. Namely, the conditions prohibit Phillips from owning, using or possessing a computer or any other internet-capable electronic device without the written permission of his probation officer. Phillips may not otherwise access or attempt to access the internet by any means without the approval of his probation officer, and he may not utilize e-mail in any form without the approval of his probation officer.

Phillips asserts that the foregoing restrictions are "overbroad, imposed without sufficient basis in the record, are greater deprivations of liberty than necessary to meet the statutory objectives of supervised release, do not reflect the nature and circumstance of the offense, and implicate important First Amendment rights to free speech and free association." However, Phillips' brief develops its argument around the assumption that "[t]he conditions' plain language prohibits *all* forms of computer equipment, regardless of its internet capability," specifying that "such a sweeping ban on *all* forms of computer use creates a de facto occupational restriction in violation of [federal law]" (emphasis added).

In response, the government notes that "contrary to [Phillips'] representations, the new conditions did not impose an absolute ban upon his use of computers, internet, or e-mail, but rather merely required him to obtain approval from his probation officer before doing so."

"The district court has broad discretion to impose appropriate conditions of supervised release." *United States v. Brandenburg*, 157 F. App'x 875, 879 (6th Cir. 2005) (citing *Ritter*, 118 F.3d at 506). The district court will not be found to have abused its discretion in imposing a condition of supervised release "so long as the condition bears a direct relationship to the dual goals of advancing a defendant's rehabilitation and protecting the public and involves no greater deprivation of liberty than is reasonably necessary to achieve these goals." *Id*.

Here, Phillips' argument appears to be based entirely on a misreading of the language of the conditions imposed. None of the three conditions "prohibits *all* forms of computer equipment, regardless of its internet capability." In fact, each condition is specific to the internet capability of the computer. Furthermore, the government is correct that the conditions do not impose a complete ban even on internet-capable computer equipment. Rather, the conditions require that Phillips seek the prior approval of his probation officer to authorize Phillips' uses of e-mail and the internet. Presumably, a probation officer would not deny Phillips the use of e-mail in a manner that would enable legitimate professional pursuits or other activities that would contribute to Phillips' rehabilitation.

Furthermore, the internet restriction bears "a direct relationship to the dual goals of advancing [Phillips'] rehabilitation and protecting the public." *See id*. As evidenced by the revocation hearing transcript, Phillips' treatment provider has expressed great concern that "Phillips [came] out of prison for the offense he was convicted of and then immediately g[o]t back into associations" with people whose only commonality is that "they like to have sex with underage boys." All of Phillips' contact with Schillaci, and also his contact with fellow "BoyChat/Boy Lover" website users "regarding" his victim, took place over e-mail. The "direct relationship" standard is satisfied here. *See id*.

Therefore, the Court **AFFIRMS** the district court's imposition of the internet-related conditions, as currently worded, upon Phillips' 20-year term of supervised release.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the district court's finding that Phillips violated the terms of his supervised release, specifically as alleged in Violation II of the probation officer's Petition.

Furthermore, the Court **AFFIRMS**, in all respects, the sentence imposed by the district court upon its revocation of Phillips' supervised release.