NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0784n.06

Case No. 09-4243

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Nov 22, 2011*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| TIMOTHY L. LANTZ, | ) DISTRICT OF OHIO |
| | ) |
| Defendant-Appellant. | ) |
| | ) |
| _____ | ) |

BEFORE: BATCHELDER Chief Judge; ROGERS and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Timothy Lantz pled guilty to distribution of child pornography. He now appeals several special terms of the supervised release to which he will be subject when he completes his 15-year prison sentence in 2024, at age 72. He also appeals the imposition of a $10,000 fine. We **VACATE** part of Condition 1, **VACATE** the $10,000 fine, **AFFIRM** the rest of the sentence, and **REMAND** for resentencing proceedings consistent with this opinion.

## FACTS & PROCEDURAL HISTORY

On June 21, 2006, an undercover FBI agent monitored an Internet Relay Chat ("IRC") channel where people advertised and traded child pornography. The agent found an IRC account that made available for download a number of child pornography videos and images. The agent downloaded 7 video files and 44 images of child pornography from that account. The FBI traced

the files and account to Lantz. On January 19, 2007, in executing a search warrant at Lantz's residence in Columbus, Ohio, FBI agents recovered computer equipment containing approximately 9,000 images and 1,200 videos of child pornography. Agents also discovered evidence that Lantz had been contacting a 15-year old boy in Michigan by the name of "Joshie," telling the boy that he had a crush on him and engaging in sexually explicit discussions with the boy.

One week later, Lantz fled the country, going first to Amsterdam, then to Spain, where he claims to have invested all of his money in a bar that failed, and finally to the Philippines. In April 2008, he contacted the American embassy to secure help getting back to the United States. He claims that in the Philippines he had been targeted for kidnaping and ransom by a local Muslim terrorist group known as Abu Saief. The United States government indeed assisted Lantz in returning home, but not in the way he probably would have liked. The government revoked his passport, took him into custody, and on July 28, 2008, transported him back to the United States, in the process spending more than $50,000.

The government charged Lantz with numerous offenses pertaining to child pornography. He entered into a plea agreement in which he pled guilty to one count of transporting child pornography and one count of failing to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA) (Lantz acknowledges that he has at least one prior conviction for an offense that requires SORNA registration), and in return, the government dismissed the remaining charges. The parties agreed to a sentence of 15 years' imprisonment.

At sentencing, the court adopted the facts set out in the PSR. According to that report, Lantz has a substantial history of sexual deviancy. At age 16, he was arrested for engaging in sexual

activity with a 10 year-old boy. At age 22 he was convicted and served 4.5 years in prison for sexual

contact with 4 boys, ages 9 to 10. He served 18 months in prison for forcibly restraining his 16 year-

old stepdaughter for sexual purposes. He served 34 months in prison in New Hampshire after selling

child pornography to an undercover agent. As late as 2005, as part of his post-release control for the

New Hampshire conviction, he revealed that he was still having sexual fantasies regarding children.

He also revealed to his counselor at that time a much more extensive history of sexual offenses with

minors than was previously known. Lantz raised no objection to those factual findings.

The district court then accepted the plea agreement and imposed the 15-year sentence. The

court also imposed a life term of supervised release, including the standard conditions of release and

several special conditions, of which the following are of interest in this appeal:

> (1) The Defendant shall neither possess nor have under his control any matter that is pornographic or that depicts or alludes to sexual activity or depicts minors under the age of 18. This includes, but is not limited to, any matter obtained through access to any computer or any material linked to computer access or use.
> . . . .
> (3) The Defendant is prohibited from possessing a computer for recreational purposes. . . .
> . . . .
> (4) The Defendant shall not possess any computer equipment and shall not access the Internet or Intranet for recreational purposes.
> (5) The Defendant shall not possess, or use, a computer with access to any "on-line computer service" at any location (including employment) without the prior written approval of the probation department. . . .

Lantz did not object to any of these conditions, either before or after the court asked the *Bostic*

question.[1]

---

[1] *See United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004).

The court also imposed a fine, but the procedure it followed was a bit irregular. The Guidelines recommended a fine between $20,000 and $200,000. The PSR noted that Lantz was in poor financial condition: he had a negative balance in a savings account, he filed for bankruptcy in the 1980s, he owed a few debts totaling around $1,800, and he believed he had outstanding taxes. The PSR stated that he did not appear to have the ability to pay a fine and recommended not imposing a fine.

When the court initially sentenced him, it stated, "The Court finds that the defendant does not have the ability to pay a fine," and assessed no fine. R.72 (Sentencing Tr.) at 14. After the court announced the sentence, however, the government objected, asking for a fine of some sort. *Id.* at 17. The government's theory was that Lantz inherited a large sum of money when his mother died in 2007, and it suspected he might still have some of that money or some more might be due to him out of the estate. Lantz argued that he was "totally indigent." *See id.* at 17–22. Lantz and the court went back and forth until the court stated, "That may be the case, Mr. Lantz, but I don't know. But instead of us sitting here for the rest of the afternoon guessing, we will go check it out. Okay?" *Id.* at 21–22. The court then imposed a $10,000 fine, advising Lantz, "You may enter an objection to that, if you wish." *Id.* at 21. Lantz entered no further objection.

## DISCUSSION

On appeal, Lantz argues that several of the special conditions imposed are substantively unreasonable, and that the court committed procedural error in imposing the fine. The government counters that not only are the special conditions of release reasonable, any challenge is unripe, and the court did not abuse its discretion in imposing the fine.

I.      **Special Conditions**

A.      **Ripeness**

First, the government argues that any challenges to the special conditions are unripe. Generally, "[t]his Court has held that conditions of supervised release may be ripe for appellate review immediately following their imposition at sentence." *United States v. Lee*, 502 F.3d 447, 449–50 (6th Cir. 2007). However, there are exceptions. In *Lee*, the sentencing court imposed various conditions on supervised release, including "participat[ion] in a specialized sex offender treatment program that may include use of a plethysmograph and polygraph."[2] *Id.* at 449. We found that a challenge to the use of the plethysmograph was unripe because (1) the special condition stated only that the sex-offender treatment in which the defendant would be required to participate *may* include the use of such testing; and (2) it was unclear whether, because of possible technological advances, such testing would even be in use at the time of defendant's release in 2021. *Id.* at 450.

In *United States v. Massey*, 349 F. App'x 64, 69–70 (6th Cir. 2009), the defendant challenged the condition of supervised release that "may" require polygraph or plethysmograph testing, and required him to report all electronic addresses from which he sends/receives communication. Citing *Lee*, we found unripe a challenge to the polygraph or plethysmograph testing, *Massey*, 349 F. App'x at 70, but we did not mention the electronic address reporting at all. Nor did we explicitly mention the possibility of technological change as relevant to our ripeness decision.

---

[2] "Penile plethysmograph testing is a procedure that involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." *Lee*, 502 F.3d at 449 n.1 (internal quotation marks and citation omitted).

The exceptions to the general rule in *Lee* are not applicable here. The conditions imposed upon Lantz's release are not mere possibilities or options. They are all mandatory. This is not an instance, as in *Lee*, where the probation department was given several options as to how to carry out the special conditions. Furthermore, while the potential for technological change may mean that the restrictions on Lantz's internet and computer use may prove less efficacious in 2024 than they would be today, *Lee* and *Massey* do not stand for the extremely broad proposition that prospective changes in technology render any current challenge to a special condition of release unripe.

The challenged conditions are ripe for review. If changes in technology by the year 2024 render the conditions suspect, Lantz may seek to modify them at that time under 18 U.S.C. § 3583(e).

### B. Standard of Review

We ordinarily review for abuse of discretion a district court's imposition of conditions of supervised release. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). But because the district court asked the *Bostic* question, and Lantz raised no objections, we will review only for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

To show plain error, the appellant must show "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation and internal quotation marks omitted). A lack of binding precedent on the specific issue indicates that there is no plain error. *See United States v. Amos*, 501 F.3d 524, 529 n.2 (6th Cir. 2007). Similarly, the existence of conflicting precedents among the

circuits on an issue we have not decided indicates that an error is not plain. *United States v. Madden*,

515 F.3d 601, 608 (6th Cir. 2008).

A district court may impose a special condition of supervised release if it meets three

requirements:

> First, the condition must be "reasonably related to" several sentencing factors. 18 U.S.C. § 3583(d)(1). These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D). Second, the condition must "involve[ ] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. 18 U.S.C. § 3583(d)(2). These purposes are "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(B)–(D). Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3).

*Carter*, 463 F.3d at 529–30.

### C.    Substantive Analysis of Special Conditions

#### 1.    Condition 1

Condition 1 states:

(1) The Defendant shall neither possess nor have under his control any matter that is pornographic or that depicts or alludes to sexual activity or depicts minors under the age of 18. This includes, but is not limited to, any matter obtained through access to any computer or any material linked to computer access or use.

Lantz argues that the term "pornographic" is vague and overbroad. However, he advances

only vagueness arguments in his brief. Lantz Br. at 25–29. We therefore deem his overbreadth

argument waived. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006). He also argues that the remaining restrictions in Condition 1 are overbroad and impermissibly restrictive, two arguments that really merge into one.

Some circuits have upheld bans on "pornography" or "pornographic materials," rejecting vagueness arguments. *See United States v. Stults*, 575 F.3d 834, 854–55 (8th Cir. 2009) (denying vagueness argument on plain error review); *United States v. Brigham*, 569 F.3d 220, 232 (5th Cir. 2009) (rejecting vagueness "as applied" argument); *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003) (rejecting vagueness argument); *see also United States v. Love*, 593 F.3d 1, 14 (D.C. Cir. 2010) (upholding lifetime restriction on possession of pornographic materials on plain error review).

Two other circuits have struck down such bans as vague. *United States v. Stoterau*, 524 F.3d 988, 1002–03 (9th Cir. 2008) (ban on "pornography" was too vague); *United States v. Antelope*, 395 F.3d 1128, 1141–42 (9th Cir. 2005) (ban on "any pornographic materials" was too vague); *United States v. Loy*, 237 F.3d 251, 265 (3d Cir. 2001) (ban on "possessing all forms of pornography, including legal adult pornography" impermissibly vague).

This circuit has not specifically addressed whether a ban on all pornography is impermissibly vague, and the circuits are split on the issue. It would therefore be inappropriate to find plain error in these circumstances. *See Madden*, 515 F.3d at 608; *Amos*, 501 F.3d at 529 n.2.

However, the ban on material that "depicts or alludes to sexual activity" is certainly overly broad. Several circuits have struck down similarly broad language in conditions of supervised release. *United States v. Kelly*, 625 F.3d 516, 521–22 (8th Cir. 2010) (struck down condition that restricts access to any material that alludes to sexual activity); *United States v. Voelker*, 489 F.3d

139, 151 (3d Cir. 2007) (lifetime ban on "sexually explicit" materials overbroad); *Cabot*, 325 F.3d at 386 (government conceded that identical special condition was overbroad).

A restriction on material that "depicts . . . sexual activity" alone might not be overly broad. But one that bans mere *allusion* to sexual activity is certainly overly broad. Not only would such a ban prohibit the defendant from reading significant parts of the Old Testament—Proverbs 7, The Song of Solomon, and II Samuel 11 come immediately to mind—it would encompass an enormous swath of literature, music, and other media. Indeed, Lantz arguably could not possess even a television—which broadcasts sexual allusion in everything from afternoon soap operas through prime time "drama"—or a radio—which subjects listeners to such things as annoyingly persistent advertisements for "male enhancement" products.

While there is no case on point in this circuit, such a restriction cannot survive plain error review. Given the mass of literature and other media such a condition would encompass, the error was clear and obvious; it affects substantial First Amendment rights to receive information, *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997), and to freely exercise religion, *see Hudson v. Palmer*, 468 U.S. 517, 547 n.13 (1984) (Stevens, J., concurring in part and dissenting in part) ("A prisoner's possession of . . . personal property relating to religious observance, such as a Bible or a crucifix, is surely protected by the Free Exercise Clause . . . ."); and it calls into question the fairness of the proceedings because of the severity of the restriction. Finally, although we have little doubt that the sentencing judge was focused on the need to restrict Lantz's access to an appropriately narrow class of materials, in reality, this restriction is so broad that it seems to have little to do with any of the sentencing factors.

Similarly, the ban on any material that "depicts minors under the age of 18" cannot withstand even plain error review. *See United States v. Esparza*, 310 F. App'x 80, 83 (9th Cir. 2009) (ban on "any material that relates to . . . images of minors" was vague and overbroad); *Cabot*, 325 F.3d at 386 (government conceded that special condition identical to the one at issue here was overbroad). The condition is not limited to pornographic depictions of minors or minors in sexual situations (and obviously, those are illegal, anyway). It would ban a large swath of advertising for television programs and movies, sales circulars in the Sunday paper, and even some boxes of cereal. It would prevent Mr. Lantz from having any photographs of relatives, even fully clothed, who were minors. Again, while there is no case on point in this circuit, the error here is plain.

### 2. Conditions 3, 4, and 5

The remaining special conditions all relate to the internet and computers. Because there is some overlap between the conditions, we address them together:

> (3) The Defendant is prohibited from possessing a computer for recreational purposes. . . .
> . . . .
> (4) The Defendant shall not possess any computer equipment and shall not access the Internet or Intranet for recreational purposes.
> (5) The Defendant shall not possess, or use, a computer with access to any "on-line computer service" at any location (including employment) without the prior written approval of the probation department. . . .

We read Condition 4 to mean that the prepositional phrase "for recreational purposes" modifies both the possession of computer equipment and access to the internet. Conditions 3 and 4 together ban possession of a computer or computer equipment for recreational purposes and use of the internet

for recreational purposes. Even the probation department cannot give Lantz permission to deviate from these restrictions.

Condition 5 then applies to the use of computers (not possessed by Lantz) for all purposes and use of the internet for all non-recreational purposes. That means Lantz must get permission to use or possess a computer with Internet access for work, in order to file taxes, to engage in online banking, and for any other non-recreational purpose. He would not be prohibited from possessing a computer without internet access for non-recreational purposes. And he could use a computer that he does not possess for recreational purposes—without accessing the Internet. He could still play Solitaire on a computer at a library or at work, for example.

Because of the fact-specific nature of other cases imposing restrictions on computer and internet access, and the infinite variations on such restrictions, it is difficult to find cases directly on point. Nonetheless, the factors most relevant to tailoring the special conditions to the particular defendant are the history and characteristics of the defendant, the conduct involved in the defendant's criminal conviction or convictions, and the length of supervised release.

Lantz's special conditions are closest to those in *United States v. Demers*, 634 F.3d 982 (8th Cir. 2011) (per curiam). There, the defendant was banned from having access to an internet-connected computer or accessing the internet from any location without first demonstrating a "justified reason" for that access and obtaining the approval of the probation officer. *Id.* at 983–84. The court upheld the restriction. Demers was a registered sex offender with a prior history of sexual abuse and possession of child pornography. *Id.* at 983. Like Lantz, Demers pled guilty, although

to possession, while Lantz pled guilty to distribution. *Id.* Although there are some differences between the conditions imposed on Lantz and those imposed on Demers, they are not material.

*United States v. Phillips*, 370 F. App'x 610 (6th Cir. 2010), is also similar. In that case, the district court imposed a special condition prohibiting the defendant "from owning, using or possessing a computer or any other internet-capable electronic device without the written permission of his probation officer." *Id.* at 620. We found that the restrictions were not overly restrictive because they did not ban all computer and internet use and they were reasonably related to protection of the public and rehabilitation. *Id.* at 621. We note, however, that Phillips's crime of conviction was different from Lantz's—Phillips was sentenced for illegal sexual contact with a minor outside of the U.S. and violated an earlier condition of supervised release from that sentence. *Id.* at 612.

In *Antelope*, 395 F.3d at 1142, the court affirmed a supervised release condition that was exactly the same as Condition 5 in Lantz's case: the defendant was prohibited from "possess[ing] or us[ing] a computer with access to any 'on-line computer service' at any location (including employment) without the prior written approval of the probation department." The defendant's underlying offense was possession of child pornography, and his term of supervised release was only 26 months, *id.* at 1131–32, and because there is little in the case about the defendant's history (the bulk of the defendant's appeal concerned his claim that under the Fifth Amendment he could not be required, as a condition of release, to reveal his prior sexual history, and the court did not discuss his criminal history), comparison to Lantz is difficult. But inasmuch as the release condition was upheld in *Antelope*, where the offense of conviction was the arguably less serious offense of possession and

the record is silent as to criminal history, that case would argue for a finding that the restriction is valid in Lantz's case.

The harshest and most sweeping ban was upheld in *United States v. Brigham*, 569 F.3d 220 (5th Cir. 2009). There, the court upheld a special condition mandating that "[t]he defendant shall not possess or utilize a computer or internet connection device during the term of supervised release." *Id.* at 224; *see id.* at 234 ("[T]hough Brigham is correct that computers and the internet have become significant and ordinary components of modern life as we know it, they nevertheless still are not absolutely essential to a functional life outside of prison."). Brigham was convicted of one count of receipt of child pornography. *Id.* at 223. Other offense conduct indicates that he actively stored and shared child pornography. *Id.* at 233–34. While the opinion does not set out his criminal history, his original sentence called for 51 months in prison and 3 years of supervised release, an indication that the criminal history was not extensive. *See id.* at 223. Although the supervised release term is shorter than Lantz's lifetime term, *Brigham* is the most damaging to Lantz's case because of the sweeping, absolute ban on *all* computer and internet use.

In *United States v. Miller*, 594 F.3d 172, 176 (3d Cir. 2010), the court struck down a lifetime supervised release condition that prevented Miller from using without prior written approval a computer with internet access. Miller was convicted of possession of child pornography for having 11 images on a disk. *Id.* at 175. Although his criminal history category under the Guidelines was only I, the court sentenced him to lifetime supervised release following his 30 month prison sentence. *Id.* at 176. In striking down the release condition, the court explained that Miller's case involved only receipt and possession of child pornography, whereas other cases upholding internet

bans involved the active solicitation of sexual contact with minors. *Id.* at 185–88. *Accord Love*, 593 F.3d at 12 ("Consensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to 'initiate or facilitate the victimization of children.'"). In contrast to Miller, Lantz had a more extensive history of sexual deviance, and there was evidence that he had been engaging in sexually explicit discussions with at least one minor via the internet.

In *Voelker*, 489 F.3d 139, the court struck down as overbroad a condition prohibiting the defendant from "accessing any computer equipment or any 'on-line' computer service at any location, including employment or education. This includes, but is not limited to, any internet service provider, bulletin board system, or any other public or private computer network." *Id.* at 143. Voelker was convicted of possession of child pornography. The court sentenced him to 71 months in prison followed by a lifetime of supervised release. *Id.* at 142. Because Voelker's conduct was not as severe as other cases that involved active solicitation and predatory conduct towards minors, the court held that the lifetime absolute ban was not narrowly tailored. *Id.* at 144–50. But this case can easily be distinguished from Lantz's; Lantz had a more extensive history, he was a distributor of child pornography, he had initiated and engaged in sexually explicit communication with a minor over the internet, and his internet and computer restrictions were not absolute.

Among a few of the circuits, there appears to be a consensus that internet bans are unreasonably broad for defendants who possess or distribute child pornography, but not those who use the internet to "initiate or facilitate the victimization of children." *See Love*, 593 F.3d at 12. Indeed, there are many cases that have struck down internet bans of various types because the

sentencing conduct involved "only" possession of child pornography, and not something more heinous. This circuit is not part of that "consensus," and we will not join today. While predatory conduct via the internet is certainly more heinous, a ban on internet access is particularly relevant for those who distribute child pornography via the internet. It is the very medium that facilitates such free and anonymous criminal distribution. By such distribution, the criminal also enables and entices others to commit crimes necessary to make child pornography more available.

In any event, Lantz is not a mere possessor or distributor. The PSR specifically noted that at the time of the search warrant, he had begun a sexually explicit online relationship with a 15 year-old boy via the Internet. While he was not convicted on that conduct, it is still relevant to tailoring his sentence. *See United States v. Dupes*, 513 F.3d 338, 344 (2d Cir. 2008) (unrelated criminal conduct can be grounds for imposing supervised release conditions).

Given the varying outcomes among the circuits, it is clear that under plain error review, if there were any error in Lantz's case, it cannot be said to be "obvious or clear."

**D.     Procedural Analysis of Special Conditions**

Lantz argues that the district court committed procedural error with regard to all of the special conditions imposed because the court did not adequately state in open court its reasons for imposing those conditions.

Lantz is correct that "[t]he [district] court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," including any special terms of supervised release. 18 U.S.C. § 3553(c); *see United States v. Carter*, 463 F.3d 526, 528–29 (6th Cir. 2006).

But a court's failure to explain its reasons for imposing a special condition will be considered harmless error if the reasons are clear from the record. *Carter*, 463 F.3d at 529 n.2.

At sentencing, the court gave a brief explanation of its reasons for sentencing Lantz to 180 months in prison. If this was not sufficient to also explain the special conditions of supervised release, any error was certainly harmless, because it is obvious from the record why the court imposed the special conditions. Lantz possessed and made available to others an extensive collection of child pornography. He was actively engaging in sexually explicit online conversations with a 15 year-old boy at the time the FBI executed the search warrant. Lantz has an extensive history of sexual deviance involving minors, not limited only to child pornography. During treatment counseling in 2005, he revealed an even more extensive history, beyond what was contained in the PSR. Aside from the overbroad conditions noted above, the reasons for the rest of the special conditions are abundantly clear from this record. The conditions restricting his internet and computer use (with many exceptions) were imposed to limit Lantz's ability to access child pornography, distribute child pornography, and solicit minors for sexual purposes. The procedural error, if any, was harmless.

## II.     Procedural Error in Imposition of $10,000 Fine

Lantz argues that the court committed procedural error by imposing the $10,000 fine. Whether we review this claim of error for abuse of discretion, *see United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006), or for plain error (because Lantz entered no further objection after the fine was imposed, although he had objected strongly during the proceedings) is not entirely clear, but we need not resolve the issue. Under any standard of review, we are compelled to find error.

As noted above in the fact section, the sequence of events leading to the imposition of the fine was irregular. The PSR noted that Lantz probably had no assets, no income, and no ability to pay a fine. The government never objected to these findings. The court adopted the PSR, specifically noted that Lantz did not have the ability to pay a fine, and stated that it would impose no fine. A few moments later, the government objected, asking that some sort of fine be imposed.[3] The government argued both that (1) Lantz might still have assets from inheriting his mother's estate, and (2) a fine would catch part of any future income Lantz might acquire, should he find gainful employment outside of prison.

The government was anything but sure that Lantz actually had any assets still available from his mother's estate. *See* R.72 at 18 ("I don't have any basis that he has any money left . . . ."); *id.* ("[H]e might have spent it all while he was out of the country, but I just don't know that to be a fact. I just know it is not appearing in any of his account that Probation has accessed."). The probation department indicated Lantz did not have any assets, stating, "as of right now, there is no evidence that he has the ability to pay a fine." *Id.* at 18–19. Lantz's attorney consistently argued that Lantz had no money. *Id.* at 17 ("He is totally indigent. He doesn't have a penny to his name, Your Honor."); *id.* at 19 ("He had some money, but he lost it when he bought a bar in Spain. . . . He was penniless."). The court was not even sure whether Lantz might still have income due to him from his mother's estate. *Id.* at 20 ("Well, I am not saying one way or the other whether he does or

_____

[3]The government's late objection would seem to be barred in light of Federal Rule of Criminal Procedure 32(f), requiring, "Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report."

doesn't."). The court then imposed a $10,000 fine. *Id.* at 21. When Lantz persisted in his objection, the court responded, "That may be the case, Mr. Lantz, but I don't know. But instead of us sitting here for the rest of the afternoon guessing, we will go check it out. Okay?" *Id.* at 21–22. The district court recommended that the Probation Department investigate the status of Lantz's mother's estate to see if anything was left to be paid out to Lantz. We have no information about the results of that investigation, or even whether it took place.

Under the Guidelines, the default is that a fine be imposed: "The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The burden of showing that a defendant is unable to pay a fine rests ultimately on the defendant. *Id.*

When any part of the PSR is disputed, the court is required to make factual findings of disputed sentencing factors. *See* Fed. R. Crim. P. 32(i)(3)(B) (stating that the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"). The party raising the dispute must call it to the attention of the sentencing court to trigger the requirement under Rule 32(i)(3)(B). *See United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007).

We require literal compliance with Rule 32(i)(3)(B), and we review compliance de novo. *Id.* at 414–15. "[T]he court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence. Rather, the district court must affirmatively rule on a controverted matter where it could potentially impact the

defendant's sentence." *Id.* at 415 (citations and internal quotation marks omitted). "[T]he district court must *actually find facts*." *Id.* at 416. The record admits of no conclusion but that the district court did not make the requisite findings of fact.

Lantz did not explicitly raise the Rule 32(i)(3)(B) issue at sentencing. But he did make it clear that he believed that the facts surrounding his ability to pay a fine were in genuine dispute, and the district court did not affirmatively rule on this material factual dispute. The government argues that there was no error because Lantz didn't carry his burden of proving he could not pay a fine (even though he did submit some testimonial evidence in addition to the PSR's findings). But whether or not Lantz carried his burden is exactly the question that the district court had a duty to decide under Rule 32(i)(3)(B). If Lantz did not carry his burden, the court was required to resolve the dispute by saying so. This procedural error is particularly problematic here because of the sequence of events: (1) the court found that Lantz did not have the ability to pay (apparently deciding that Lantz *had* carried his burden under U.S.S.G. § 5E1.2(a)); (2) the government objected (for the first time, in violation of Rule 32(f)); (3) the government suggested that Lantz might still have income from his mother's estate; (4) the court specifically stated that it did not know and that it would not decide at that time, and asked the probation department to investigate further; and (5) the court nonetheless imposed the $10,000 fine. The court thus did not resolve this disputed issue of fact, and indeed, explicitly stated that it had not resolved the material factual dispute.

The government seems to argue that the error was harmless because Lantz has not advanced any new evidence to show that he was unable to pay a fine. That argument misses the mark. At this point, the dispute is not over the underlying determination of whether Lantz could pay the fine, but

-19-

rather over the district court's apparent failure to resolve the factual dispute. Lantz is not required to submit new evidence for his argument; the court is required to decide the issue based on the evidence before it.

We conclude that under any standard of review, the district court failed to adequately resolve the factual dispute as required by Rule 32(i)(3)(B).

Lantz also argues that the district court failed to attach a written copy of its resolution of the disputed factual issues in the PSR to be forwarded to the Probation Department as required by Rule 32(i)(3)(C). Lantz failed to allege any prejudice from this error, so Lantz's argument must be rejected. *See United States v. Talley*, 188 F.3d 510 (6th Cir. 1999) (table).

**CONCLUSION**

For these reasons, we **VACATE** the parts of Condition 1 banning possession of material "that depicts or alludes to sexual activity" and "depicts minors under the age of 18;" **VACATE** the fine; **AFFIRM** the remainder of the sentence; and **REMAND** for resentencing consistent with this opinion. We note that Lantz remains free to challenge the conditions of his supervised release once they are imposed under 18 U.S.C. § 3583(e).