*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0321p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GREGORY ALEC PHILLIPS,

               *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

               *Respondent-Appellee.*

No. 11-6249

> Appeal from the United States District Court
> for the Eastern District of Tennessee at Knoxville.
> Nos. 3:04-cr-179-1; 3:08-cv-57—Thomas W. Phillips, District Judge.

Argued: June 21, 2013

Decided and Filed: November 4, 2013

Before: ROGERS and KETHLEDGE, Circuit Judges; BORMAN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Hallie H. McFadden, Signal Mountain, Tennessee, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Hallie H. McFadden, Signal Mountain, Tennessee, for Appellant. Debra A. Breneman, Charles E. Atchley, Jr., UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

## OPINION

_____

BORMAN, District Judge. Gregory Alec Phillips, a former federal prisoner now on supervised release, was indicted on December 7, 2004, in the United States District

_____

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

Court, Eastern District of Tennessee.  (R. 3, Sealed Indictment.)[1]  The one-count indictment charged that on or about November 2004, Phillips, an adult citizen of the United States, did travel in foreign commerce to Thailand, and did knowingly engage in illicit sexual conduct as defined in Title 18, United States Code, Sections 2423(f) and 2246, with a minor male person who had not attained the age of sixteen (16) years, in violation of 18 U.S.C. § 2423(c).  Phillips pleaded guilty to the single count and was sentenced to 37 months imprisonment, which he has served, and to lifetime supervised release.  Phillips was released from prison on August 16, 2007.  Subsequently, Phillips violated multiple terms of his supervised release and was sentenced to an additional 30 months imprisonment and thereafter to a 20 year term of supervised release.  Phillips was released from his second incarceration in or about September, 2010, and continues on supervised release.

Phillips now appeals the district court's order denying his motion to vacate judgment filed under 28 U.S.C. § 2255.  In his motion to vacate in the district court, Phillips argued that the statute under which he was convicted, 18 U.S.C. § 2423(c), which punishes "[e]ngaging in illicit sexual conduct in foreign places," applied only to individuals who both traveled in foreign commerce and engaged in illicit sexual conduct after the statute was enacted on April 30, 2003.  Phillips also argued that his conviction violated the Ex Post Facto clause.  Declining to address the government's arguments that Phillips's § 2255 motion was time-barred and procedurally defaulted, the district court addressed the merits and ruled that Phillips's foreign travel need not have preceded the date of enactment of section 2423(c), as long as the illicit sexual conduct occurred after the statute was enacted, which in Phillips's case it did.  The district court denied the motion to vacate, and denied Phillips a certificate of appealability.  *Phillips v. United States*, No. 04-cr-179, 2011 WL 4436526 (E.D. Tenn. Sept. 23, 2011).  This Court granted Phillips's motion for a certificate of appealability, on the issue of whether 18 U.S.C. § 2423(c) requires that both the travel and the illicit sexual conduct occur after enactment of the statute criminalizing engaging in illicit sexual conduct in foreign

---

[1] Unless otherwise indicated the designation "R._" indicates the Docket Entry Number on the District Court Docket, Case No. 04-cr-00179 (E.D. Tenn.).

places. After oral argument, this Court requested supplemental briefing addressing whether the equitable exception for actual innocence to AEDPA's one-year statute of limitations applies in this case, in light of the absence of new evidence, and in light of the Supreme Court's recent decision in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). For reasons not addressed by the district court, but addressed by the parties in the supplemental briefs, which we find dispositive of Phillips's claims, we AFFIRM the decision of the district court denying Phillips's motion to vacate judgment.

I.

A. The PROTECT Act

Title 18 U.S.C. § 2423(c), which was enacted on April 30, 2003, as part of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("the PROTECT Act"), defined as "AN ACT To prevent child abduction and the sexual exploitation of children, and for other purposes," provides:

"Illicit sexual conduct" is defined as:

> (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; or (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

18 U.S.C. § 2423(f). *See* Pub. L. No. 108-21, 117 Stat. 650 (2003).[2]

Section 2423(c) originally was proposed as one of a number of amendments to 18 U.S.C. § 2423, as part of the Sex Tourism Prohibition Improvement Act of 2002. H.R. REP. 107-525 (June 24, 2002), 2002 WL 1376220 (2002). Ultimately, the amendments proposed as part of the Sex Tourism Prohibition Improvement Act of 2002 became law as part of the PROTECT Act in 2003, replacing the single section (b), which

---

[2]Section 2423(c) thus covers both non-commercial (subsection (f)(1)), and commercial (subsection (f)(2)), illicit sexual conduct. *United States v. Bianchi*, 386 F. App'x 156, 162 (3d Cir. 2010), *cert denied*, 131 S. Ct. 1044 (2011) (noting that "[t]he Supreme Court's broad interpretation of the Foreign Commerce Clause applies with equal force to the non-commercial sexual conduct prong of § 2423(c)," and finding that Bianchi did not establish that Congress had exceeded its constitutional bounds by enacting the non-commercial prong).

punished travel in interstate commerce with intent to engage in a sexual act with a minor, with new subsections (b) through (g). Subsection (b), "Travel With Intent to Engage in Illicit Sexual Conduct," remained essentially unchanged and subsections (c) through (g) were newly added. Subsection (c), "Engaging in Illicit Sexual Conduct in Foreign Places," under which Phillips was indicted in this case, has no intent requirement and punishes one who travels in foreign commerce and engages in illicit sexual conduct with another person.[3]

B. Phillips's Conviction, Supervised Release Violations and Motion to Vacate

In August, 2001, Phillips traveled from the United States to Thailand to begin employment as a teacher at the American School of Bangkok, in Bangkok, Thailand.[4] At the time he decided to travel to Thailand to seek employment as a teacher, Phillips had just completed 36 months probation following a 1998 conviction in Mecklenburg, North Carolina, for taking indecent liberties with a child. Because Phillips was prohibited from seeking employment as teacher in the United States, he decided to move to Thailand and find work there teaching children. At all times relevant to this action, Phillips remained a citizen of the United States, although he had obtained the necessary legal authorization to reside and work in Thailand. Beginning in or about May, 2004 (or earlier), and continuing through October, 2004, Phillips lived at his residence in

---

[3]On March 7, 2013, 18 U.S.C. § 2423(c) was amended to add, after the word "commerce," the following language: "or resides, either temporarily or permanently, in a foreign country." Section 2423(c) now reads:

> (c) Engaging in illicit sexual conduct in foreign places. Any United States citizen or alien admitted for permanent residence who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

Pub. L. 113-9 (enacted March 7, 2013). In response to this Court's June 3, 2013 letter requesting the parties to file supplemental briefs on the significance of this amendment to Phillips's appeal, Phillips responded that "the amendment has no relevance to the instant appeal" and has "no bearing on this appeal." (June 17, 2013 Supplemental Brief of Appellant 1, 2.)

[4]The details of Phillips activities while in Bangkok, and the specifics of his various supervised release violations that resulted in his second incarceration, are set forth in this Court's prior opinion and order affirming the sentence imposed by the district court for Phillips's violation of the terms of his supervised release. *United States v. Phillips*, 370 F. App'x 610, 612–16 (6th Cir. 2010).

Bangkok with a Thai national child named Prasert Ketbuakaew, also known as "Ong," who was over thirteen but under sixteen years of age during that period of time.**5**

On or about October 26, 2004, the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") in Bangkok, Thailand, sought the assistance of the Royal Thai Police in obtaining a search warrant for Phillips's residence on suspicion that Phillips was violating 28 U.S.C. § 2423(c), "Engaging in Illicit Sexual Contact in Foreign Places." (R. 46-4 at 4-6, United States Supplemental Filing to the Response to the Defendants' Motion to Suppress Thai Search Warrant, Ex. 4, October 26, 2004 Letter from Mark Robinson, Attache for ICE in Bangkok, to Surat Udomrat, Royal Thai Police Colonel.) The ICE request to Police Colonel Udomrat set forth, in pertinent part, the following investigative findings:

> Through investigation and surveillance from March 2004 to the present, this office's Special Agents and Investigators have learned that Mr. Phillips is allegedly involved in the sexual exploitation and/or endangerment of children. This information was initially developed when the American School of Bangkok (ASB) informed that Mr. Phillips was formerly teaching there until he was released based upon his suspicious behavior with the school children.

> The ASB's staff reported that Mr. Phillips was particularly interested with the school's boys as exhibited by his frequent public displays of inappropriate physical contact with them on school grounds. . . . After interviewing some of [the staff at Phillips's former Bangkok residence], it was learned that Mr. Phillips regularly brought different "young Thai boys" to his apartment to spend the night. One of the boys was nicknamed or identified as "Ong," the alleged victim. . . . When Mr. Phillips moved out of [his former residence] it was determined through multiple surveillances conducted at different times such as mornings, afternoons, and evenings that Ong was inside [Mr. Phillips's] residence. It was learned that he was approximately thirteen years old.

---

**5**According to the PSR, Phillips met Ong's mother, a hot dog vendor on the streets of Bangkok, who asked Phillips to care for her son (Ong) after she lost her job. Phillips later hired several members of Ong's family, who were unemployed, to work at a martial arts studio that Phillips opened in Bangkok. Ultimately, Phillips paid for Ong to attend school and Ong began living with Phillips at his residence in Bangkok.

R. 46-4 at 5.  Based upon this, and other pertinent information learned through further investigation and surveillance, the search warrant was granted, the search was conducted and Ong was removed from the residence and transferred to child protection officers.

Although it is unclear how Mr. Phillips became aware that authorities were searching for him in Thailand in connection with these charges, according to testimony of his probation officer in connection with Phillips's supervised release revocation hearing on March 28, 2008, Phillips did become aware that he was being sought and did flee Thailand sometime in October, 2004, to Mexico, where he stayed for approximately 30 days with a former acquaintance, whom Phillips knew as "Dylan Thomas," a convicted sex offender whose actual name was John Schillaci, who was then listed on the FBI's Top Ten Most Wanted individuals.[6]  According to the testimony of Phillips's probation officer at the revocation hearing, at some point, after residing in Mexico for a period of approximately 30 days, Phillips voluntarily returned to the United States.  On December 7, 2004, Phillips was indicted on charges of knowingly engaging in illicit sexual conduct with a minor male, Ong, in violation of 18 U.S.C. § 2423(c).

On May 17, 2005, Phillips entered into a Rule 11 Plea Agreement, in which he pleaded guilty to the single count with which he was charged, engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c).  On September 28, 2005, the district court sentenced Phillips to 37 months' imprisonment and a life term of supervised release.  Phillips did not appeal his sentence and remained in federal custody at the Federal Correctional Institution, Jessup, Georgia until his release on August 15, 2007.

---

[6]According to Phillips's probation officer, Phillips was aware that the individual he knew as Dylan Thomas, whom he had met on the Internet through the BoyChat/BoyLover message board, and with whom he sought refuge when he fled Thailand, was engaging in sex with underage boys.  Phillips claims that he was, however, unaware of Thomas's status as a fugitive convicted sex offender until Phillips returned to the United States from Mexico, was convicted of the underlying offense in this case and completed his term of incarceration.  Then, in December, 2007, shortly after he was released from prison after serving his original 36 month sentence in this case, while serving his sentence of lifetime supervised release, Mr. Phillips learned that the individual whom he knew as Dylan Thomas was a fugitive convicted sex offender and attempted to broker a deal with FBI to disclose Mr. Thomas's (Schillaci's) whereabouts in exchange for a release from his supervised release.  This Court's prior opinion and order, affirming the sentence imposed by the district court for Phillips's violation of the terms of his supervised release, contains a very detailed discussion of the specifics of Mr. Phillips's supervised release violations. *See* 370 F. App'x at 613–16.

On February 20, 2008, Phillips's probation officer petitioned the district court for a warrant for Phillips arrest for multiple violations of his supervised release. The warrant was issued that same day and executed on February 26, 2008. Phillips waived his right to a preliminary hearing and detention hearing and was ordered detained without bail pending his revocation hearing before the district court. The district court held the revocation hearing on March 28, 2008 and found Phillips to be in violation of both his standard and special conditions of supervised release. The district court sentenced Phillips to an additional 30 months incarceration followed by 20 years of supervised release with additional special conditions. Phillips appealed his sentence to this Court and, on March 22, 2010, this Court affirmed the district court's finding that Phillips violated the terms of his supervised release and affirmed in all respects the sentence imposed by the district court upon revocation of his supervised release. *United States v. Phillips*, 370 F. App'x 610 (6th Cir. 2010). Phillips completed his second incarceration in September, 2010, and continues to serve his 20-year term of supervised release.

Just days before his February 26, 2008, arrest for violation of the terms of his supervised release, Phillips had filed in the district court a Motion to Vacate Judgment Under 28 U.S.C. § 2255, seeking to vacate his original conviction entered by the district court on September 28, 2005. Recognizing that his motion was filed nearly two and a half years beyond the applicable one-year statute of limitations, Phillips argued that he was entitled to relief under 28 U.S.C. § 2255(f) because the earliest date on which he could have discovered the grounds for his motion was March 29, 2007, the date on which the United States Court of Appeals for the Ninth Circuit decided *United States v. Jackson*, 480 F.3d 1014 (9th Cir. 2007), which Phillips argues establishes that the "travel" in foreign commerce required under § 2423(c) must have occurred after the statute was enacted on April 30, 2003. Phillips argued in his motion to vacate that "[c]learly the interpretation of 18 U.S.C. § 2423 changed effective March 29, 2007." (R. 72, Memorandum in Support of Mot. to Vacate at 2, PgID# 8.) Although it is undisputed that the illicit sexual conduct with the minor male Ong, to which Phillips pleaded guilty, occurred after the enactment of section 2423(c), Phillips argued that his

"travel" ended in August, 2001, when he began residing in Thailand and teaching at the American School in Bangkok. Therefore, Phillips argued, because his travel occurred before 2423(c) was enacted, this change in the law rendered him actually innocent or rendered his actions not a violation of law. Phillips also argued that application of 2423(c) to him violated the Ex Post Facto Clause.

The Government filed a motion to dismiss Phillips's § 2255 motion as untimely because it was not filed within one year of his conviction and did not meet any of the criteria for avoiding the one-year limitation period found in § 2255(f). *Jackson*, the government argued, was not a change in the substantive law by the United States Supreme Court interpreting § 2423(c) and the Sixth Circuit had issued no precedential opinion on the issue. The district court did not rule immediately on these motions.

On June 10, 2010, while still serving his 30 month prison term for violation of his supervised release, Phillips filed a Supplemental Memorandum of Law in Support of his 2008 Motion to Vacate, which had not yet been ruled upon by the district court. The Supplemental Memorandum brought to the district court's attention, as additional evidence of a purported change in the law indicating Phillips's actual innocence, the United States Supreme Court's opinion in *Carr v. United States*, 130 S. Ct. 2229 (2010). In *Carr*, the Supreme Court held that the provisions of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250, that imposed criminal sanctions on convicted sex offenders for failing to register when they travel in interstate commerce, did not apply to sex offenders whose interstate travel occurred before SORNA's effective date.

Although the issue of the timeliness of Phillips's motion was extensively briefed in the district court, that court declined to address the issue in its ruling on Phillips's motion to vacate and instead rested its decision on statutory interpretation grounds. After hearing oral argument, this Court sought supplemental briefing on the issue of the timeliness of Phillips's motion. We now find the timeliness issue dispositive of Phillips's claims in this case. We therefore AFFIRM the district court on this alternate

basis and do not reach the merits of Phillips's argument challenging the district court's interpretation of the term "travels" as used in § 2423(c).

## II.

When reviewing the denial of a motion under 28 U.S.C. § 2255, we review legal issues *de novo* and uphold factual findings unless they are clearly erroneous. *Adams v. United States*, 622 F.3d 608, 610–11 (6th Cir. 2010). Specifically, "[t]his Court reviews a district court's decision on the issue of equitable tolling *de novo* where the facts are undisputed." *Solomon v. United States*, 467 F.3d 928, 932 (6th Cir. 2006).

## III.

The statute of limitations governing the filing of a § 2255 motion is set forth in 28 U.S.C. § 2255(f) and provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of reasonable diligence.

28 U.S.C. § 2255(f).

Phillips first suggests that his petition is timely under § 2255(f)(4) because a "new fact" was discovered when the Ninth Circuit decided *Jackson* and "clarified the scope of § 2423(c)'s travel prong." (Pet'r's Supp. Br. 4.) Phillips concludes that because he filed his petition within one year of the *Jackson* decision, his petition is timely. *Id.* But as Phillips also recognizes, § 2255(f)(4) is directed at the discovery of

new facts, not newly-discovered law, and his is not such a case. The heart of Phillips's argument is not that his petition should be considered timely but that an equitable exception should be applied to "bypass the statutory bar erected by the AEDPA," because an intervening change in the law has rendered him actually innocent. (Pet'r's Supp. Br. 5–6.)

In *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court recently discussed the actual innocence exception in the context of state petitioner's untimely filing under 28 U.S.C. § 2244, describing the actual innocence exception as a "'fundamental miscarriage of justice exception, [] grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons.'" 133 S. Ct. at 1931 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Although the Court in *McQuiggin* addressed an evidentiary "factual" actual innocence claim, *i.e.* the petitioner claimed that newly discovered facts established his innocence, the Court drew upon its reasoning in several decisions, including *Bousley v. United States*, 523 U.S. 614 (1998), which recognized a fundamental miscarriage of justice exception in the procedural default context:

> The miscarriage of justice exception, our decisions bear out, survived AEDPA's passage. In *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), we applied the exception to hold that a federal court may, consistent with AEDPA, recall its mandate in order to revisit the merits of a decision. *Id.*, at 558, 118 S.Ct. 1489 ("The miscarriage of justice standard is altogether consistent . . . with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence."). In *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), we held, in the context of § 2255, that actual innocence may overcome a prisoner's failure to raise a constitutional objection on direct review. Most recently, in *House [v. Bell*, 547 U.S. 518 (2006)], we reiterated that a prisoner's proof of actual innocence may provide a gateway for federal habeas review of a procedurally defaulted claim of constitutional error. 547 U.S., at 537–538, 126 S.Ct. 2064.
>
> These decisions "see[k] to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup [v. Delo]*, 513 U.S. [298 (1995)], at 324, 115 S.Ct. 851. Sensitivity to the injustice

of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations.

133 S. Ct. at 1932 (alterations to text in original).[7]

*Bousley* thus properly informs the analysis of an actual innocence claim in the statute of limitations context. *See also Souter v. Jones*, 395 F.3d 577, 590, 590 n.5 (6th Cir. 2005) (finding a credible claim of actual innocence based upon newly discovered evidence sufficient to equitably toll the one year statute limitations set forth in § 2244(d)(1), noting the teachings of *Bousley* and observing that "the interests that must be balanced in creating an exception to the statute of limitations are identical to those implicated in the procedural default context . . .") (internal quotation marks and citation omitted). *Bousley* established an analytical framework for addressing actual innocence claims based upon a claim of legal innocence occasioned by an intervening change in law.[8] *See, e.g. Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012) ("The Sixth Circuit has derived its understanding of the definition of 'actual innocence' from *Bousley []*.") In *Wooten*, examining a *Bousley* actual innocence claim in the context of a challenge under 28 U.S.C. § 2241, via § 2255's savings clause, this Court observed:[9]

---

[7]Whether an actual innocence claim is more appropriately construed as seeking equitable tolling or an equitable exception to the statutory bar was discussed in *McQuiggin*:

> Perkins, however, asserts not an excuse for filing after the statute of limitations has run. Instead, he maintains that a plea of actual innocence can overcome AEDPA's one-year statute of limitations. He thus seeks an equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed.

133 S. Ct. at 1931 (emphasis in original) (citing *Rivas v. Fischer*, 687 F.3d 514, 547 n.42 (2d Cir. 2012) (which noted that some courts have framed the actual innocence question as whether the AEDPA allows for "equitable tolling" but finding it more accurate to describe the issue as whether an "equitable exception" exists because the due diligence requirement for equitable tolling is "incompatible with a workable actual innocence exception")).

[8]The Court declines to accept the government's suggestion that in *McQuiggin*, the Court meant to limit actual innocence claims to those instances where a petitioner presents new facts, i.e. newly discovered evidence of innocence, and by implication to undermine those cases that have applied an equitable exception in cases where the innocence is occasioned not by new evidence but by an intervening, controlling change in the law as applied to a static set of facts. As discussed *infra*, numerous cases recognize an actual innocence or fundamental miscarriage of justice exception when applied in the context of a claim of *legal* or *statutory* actual innocence, albeit through varied analytical approaches.

[9]In *Wooten*, this Court recognized that a federal prisoner unable to challenge the legality of his detention under § 2255 "may also challenge the legality of his detention under § 2241 if he falls within the 'savings clause' of § 2255 . . . ." 677 F.3d at 306–07. Section 2255's savings clause states:

> *Bousley* held that "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him ... [and] that 'actual innocence' means factual innocence, not mere legal insufficiency." 523 U.S. at 623–24, 118 S.Ct. 1604 (internal quotation marks and citations omitted). One way to establish factual innocence is to show an "intervening change in the law that establishes [the petitioner's] actual innocence." *[United States v.] Peterman,* 249 F.3d [458 (6th Cir. 2001)] at 462. This may be achieved by demonstrating (1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him.

677 F.3d at 307–08 (alterations to text in original). Phillips's claim fails at the first prong of this analysis. Neither this Circuit nor the Supreme Court has issued any "new decisions interpreting [§ 2423(c)] that substantively define" the criminal offense contained in that section. *Id*. at 308 (quoting *Garland v. Roy*, 615 F.3d 391, 396 (5th Cir. 2010)).

Phillips begins his actual innocence argument with the premise that his conduct was not criminal under § 2423(c) because his travel occurred pre-enactment. But Phillips never addresses the threshold question, dispositive here, of what Supreme Court or Sixth Circuit precedent defines the temporal scope of § 2423(c) in such a way that he now stands convicted of a crime that the law does not deem criminal. Such a showing is the gravamen of an actual innocence claim. *See Waucaush v. United States*, 380 F.3d

---

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). *See also Martin v. Perez*, 319 F.3d 799, 803–04 (6th Cir. 2003) (recognizing that § 2255 "was not intended to supplant" § 2241 and permitting petitioner to assert a *Bousley* actual innocence claim under the savings clause of § 2255); *United States v. Peterman*, 249 F.3d 458, 461–62 (6th Cir. 2001) (recognizing that a petitioner may utilize § 2241 "via § 2255's savings clause," to assert a claim of actual innocence based upon intervening Supreme Court precedent that establishes that he was actually innocent). Whether analyzed as an equitable exception to an untimely or procedurally defaulted § 2255 claim or as a § 2241 claim via § 2255's savings clause, the actual innocence exception asks the same fundamental question: does the petitioner stand convicted of conduct that the law does not make criminal, either because of credible evidentiary proof that he did not commit the crime or because the law has rendered his conduct not criminal.

251, 254 (6th Cir. 2004) (recognizing that *Bousley* established that procedural default can be excused and a guilty plea challenged under "subsequent decisions of [the Supreme Court] holding that a substantive federal criminal statute does not reach certain conduct") (alteration in original) (internal quotation marks and citation omitted); *Davis v. United States*, 417 U.S. 333 (1974) (holding that a change in the law of the circuit of conviction, interpreting Supreme Court precedent, that occurs post trial and appeal, can be asserted in a § 2255 proceeding to argue that the conduct of conviction was not a violation of the law when committed and should be set aside); *Logan v. United States*, 434 F.3d 503, 508 (6th Cir. 2006) (noting that "[p]etitioners bringing motions under § 2255 can rely on the [Supreme] Court's decisions grounded in statutory law") (alterations added).

Neither *Jackson* nor *Carr* represents an intervening change in the law that establishes in this Court that Phillips was actually innocent of engaging in illicit sexual conduct in a foreign place in violation of § 2423(c). In *Jackson*, the Ninth Circuit concluded that the plain language of § 2423(c), in particular the use of the present tense in the verbs "travels" and "engages," suggested that Congress specified the temporal reach of the statute and that § 2423(c) only applied if both the travel and the illicit sex act took place after the enactment of the PROTECT Act. 480 F.3d at 1018. While *Jackson* interprets the substantive elements of § 2423(c), it is not precedent in this Court. *See Peveler v. United States*, 269 F.3d 693, 699 (6th Cir. 2001) ("We, of course, are not bound by a decision from another circuit."). Were Phillips making his actual innocence argument in the Ninth Circuit, he might have some basis for arguing an intervening change in the law. He is not.

In *Carr*, the Supreme Court defined the substantive elements of a different criminal statute that also utilizes the term "travels." Phillips argues that the Supreme Court's decision in *Carr*, interpreting the term "travels" as used in § 2250(a) of SORNA, 18 U.S.C. § 2250(a), to be prospective only, established new law mandating a similar interpretation of the word "travels" in § 2423(c). Central to the Court's interpretation of the term "travels" in *Carr*, was the fact that both Carr and the government agreed

"that the elements of § 2250 should be read sequentially." 130 S. Ct. at 2235. The determination that SORNA required that the statutory elements must be "satisfied in sequence" led inescapably to the conclusion that a person first be "required to register under SORNA," before traveling in interstate commerce and failing to register, in order for criminal liability to attach under the statute: "Once a person becomes subject to SORNA's registration requirements, which can occur only after the statute's effective date, that person can be convicted under § 2250 if he thereafter travels and then fails to register." *Id*. at 2236. Because a person could only be "required to register" under SORNA after the statute was enacted, the Court held, the interstate travel must also occur post-enactment. *Id*. The Court noted that the context of § 2250(a) did not suggest that Congress intended to achieve, in that particular section of SORNA, a broader sweep, i.e. one that attempted to capture pre-enactment travel. *Id*. at 2238. Additionally, the Court in *Carr* noted that the legislative history relied upon by the government to support its broader reading of § 2250(a) in fact related to the goals of SORNA as a whole, not those specific to § 2250. In fact, the Court noted, the legislative history contained specific comments that § 2250 was not intended to reach "pre-enactment interstate travel," despite the statute's broader underlying goals. *Id*. at 2241–42.

We recognize that Justice Sotomayor, the author of *Carr*, in dicta in a footnote, refers to the Ninth Circuit's opinion in *Jackson* as an example of a similar "sensible" reading of the statutory term "travels:"

> Examining a criminal law with a travel element similar to the one at issue here, the Ninth Circuit itself recently agreed that "the present tense verb 'travels,' most sensibly read, does not refer to travel that occurred in the past – that is, before the enactment of the statute." *United States v. Jackson*, 480 F.3d 1014, 1019 (C.A. 9 2007) (interpreting 18 U.S.C. § 2423(c), which imposes criminal penalties on "[a]ny United States citizen . . . who travels in foreign commerce, and engages in illicit sexual conduct with another person.")

130 S. Ct. at 2236 n.5 (alteration in original). However, beyond pointing out that both § 2250(a) and § 2423(c) are criminal statutes and both use the term "travels," Justice Sotomayor offers no analysis of the "similarities," engages in no further discussion of

the Ninth Circuit's reasoning in *Jackson*, and undertakes no analysis of the structure or design of § 2423(c) that might distinguish it (or not) from § 2250(a).  Thus, *Carr* is not precedent defining the substantive criminal elements of § 2423(c).  SORNA and the PROTECT Act are different statutes and this Court cannot presume that the Supreme Court in *Carr*, by way of citation to *Jackson* in a footnote, meant also to define the substantive criminal elements of § 2423(c), a different statute, adopted in a different context and for a different purpose.[10]  Had *Jackson* been a decision of this Circuit, or had *Carr* interpreted § 2423(c) of the PROTECT Act instead of § 2250(a) of SORNA, Phillips may have at least a colorable claim that he satisfies the first prong of his actual innocence argument.  *See, e.g.*, *Davis*, 417 U.S. at 346–47 (holding that a change in the law of the circuit of conviction, interpreting Supreme Court precedent, that occurs post trial and appeal, can be asserted in a § 2255 proceeding to argue that the conduct of conviction was not a violation of the law when committed and should be vacated); *Waucaush*, 380 F.3d at 254 (finding an intervening change in the law sufficient to support an actual innocence claim where two Supreme Court decisions issued after petitioner's plea "broke new ground" by redefining the scope of Congress's power under the commerce clause and placing out of reach the very category of conduct to which petitioner pleaded guilty under, compelling a conclusion that petitioner had pleaded guilty under RICO to conduct which was not a crime); *Buffin v. United States*, No. 10-2167, 2013 WL 331565, at *3 (6th Cir. Jan. 30, 2013) (finding the first prong of the actual innocence inquiry satisfied where this Court had already held that a Supreme Court decision interpreting the very statute under review constituted "a new interpretation of statutory law").

   *Jackson* is a Ninth Circuit case, and *Carr* interprets SORNA, not the PROTECT Act.  While both may be authority for arguing in a different context that the word

---

[10]In this regard we must distinguish *Logan v. United States*, 434 F.3d 503, 508 (6th Cir. 2006), where we concluded that unique similarities between the federal carjacking and arson statutes, along with the government's concession in that case that the two statutes would be similarly interpreted, led us to permit the petitioner to rely on the Supreme Court's interpretation of the carjacking statute in asserting his actual innocence claim under the arson statute.  Such is not the case here, and the government makes no such concession, vigorously disputing the claim of similarities between § 2250(a) of SORNA and § 2423(c) of the PROTECT Act, and strongly contesting the precedential value of *Carr* in the context of this case.

"travels" should be similarly interpreted in both SORNA and the PROTECT Act, neither represents an intervening change in the law that could serve as a basis for an equitable exception argument in this Court that Phillips "stands convicted 'of an act that the law does not make criminal.'" *Logan*, 434 F.3d at 509 (quoting *Bousley*, 523 U.S. at 620). Surely the actual innocence exception, so narrowly construed that it has historically been applied with great caution and only in the case of a fundamental miscarriage of justice, cannot be so broadly defined as to be premised upon changes in statutory interpretation that may be appealing in argument, but are certainly not binding. Phillips has failed to identify a binding holding of the Supreme Court or Sixth Circuit interpreting the substantive element of "travels" in § 2423(c), a necessary component of his entitlement to seek an actual innocence equitable exception to his untimely petition.

IV.

Accordingly, we AFFIRM the decision of the district court denying Phillips's motion to vacate judgment.