NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0193n.06

Case No.14-1631

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROGER GREGORY WINBORN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| UNITED STATES OF AMERICA, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

BEFORE: KEITH, COOK, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge**.  Petitioner-Appellant Roger Gregory Winborn appeals the district court's denial of his § 2255 petition based on a claim of ineffective assistance of counsel.  Specifically, Winborn alleges that his trial attorney ("defense counsel") was constitutionally ineffective and caused prejudice to his defense for (1) failing to move to suppress his confession, (2) failing to investigate or sufficiently prepare for trial, (3) failing to issue a subpoena for his wife to testify, and (4) failing to persuade him to accept a plea offer.  The district court granted a certificate of appealability as to all claims.  For the reasons stated herein, we **AFFIRM**.

I.

On June 14, 2012, Winborn was charged with possession with intent to distribute oxycodone from January 2009 to July 2010, in violation of 21 U.S.C. §841(a)(1), and (b)(1)(C). The charge stemmed from Winborn's participation in a prescription drug fraud scheme involving a physician who wrote false prescriptions and several employees of a drug manufacturing company who would fill those prescriptions. The Government detected the illegal drug sales after a confidential informant provided a tip that a group of individuals who worked at the company was filling OxyContin prescriptions for cash. DEA agents identified Winborn and his associates in the scheme. In August 2010, agents executed a search warrant at Winborn's home. Winborn was arrested and taken to the county jail. During an interview, Winborn waived his *Miranda* rights, confessed to his role in the scheme, signed a written statement, and said he was not under the influence of drugs or alcohol at the time he was interviewed.

Winborn was arraigned on June 29, 2012. Prior to trial, the prosecutor made a plea offer with a stipulated guideline range of 121-151 months. The terms of that plea included a stipulation of relevant conduct in the amount of 1,000 kilos of marijuana equivalent, a 2-point enhancement for leader/organizer, and 3-point reduction for acceptance of responsibility. Based at least in part on defense counsel's statement that he could "beat [the stipulated guideline range] at trial," Winborn pled not guilty. Appellant's Br. at 28. A two-day trial began on October 31, 2012. During the trial, defense counsel admitted a photograph and engaged in a colloquy ostensibly to show that Winborn was on drugs when he made his confession. Defense counsel also intended to call Winborn's wife as an essential trial witness, but ultimately she did not testify. Winborn was convicted by a jury. After trial and before sentencing, defense counsel moved for new trial based on his inability to obtain Winborn's wife's testimony at trial. The

district court denied the motion because Winborn had no new evidence and thereby failed to meet the necessary requirements under Federal Rule of Criminal Procedure 33. Winborn's presentence report (PSR) recommended an advisory guidelines range of 151-188 months. On February 21, 2013, defense counsel was replaced by Winborn's current attorney. On June 11, 2013, the district court accepted the PSR but varied downward and sentenced Winborn to (1) 90 months' imprisonment, (2) three years of supervised release with a recommendation for a drug treatment program, and (3) a $100 special assessment. Winborn did not file a direct appeal.

Winborn filed a motion to vacate pursuant to 28 U.S.C. § 2255 on October 29, 2013. The district court denied the motion on April 29, 2014, while granting a certificate of appealability as to all claims. Winborn timely appealed the denial on May 20, 2014.

## II.

"When reviewing the denial of a motion under 28 U.S.C. § 2255, we review legal issues *de novo* and uphold factual findings unless they are clearly erroneous." *Phillips v. United States*, 734 F.3d 573, 580 (6th Cir. 2014); *Dawson v. United States*, 702 F.3d 347, 349 (6th Cir. 2012) ("Claims of ineffective assistance of counsel present mixed questions of law and fact, which we review *de novo*."). We review a district court's decision not to hold an evidentiary hearing for abuse of discretion. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.

To prove a claim of ineffective assistance of counsel, Winborn must show both that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that defense counsel's deficient performance caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). On appeal, Winborn alleges that defense counsel: (1) failed to seek suppression of Winborn's incriminating

confession; (2) failed to subpoena Winborn's wife as a trial witness; (3) was generally deficient in trial preparation; and (4) misrepresented Winborn's chances of success at trial (stating that he could "beat this"), causing him to reject a plea agreement. These errors, Winborn argues, resulted in prejudice—depriving him of a potentially more favorable sentencing guideline range.

If we can more easily dispose of an ineffective-assistance-of-counsel claim for lack of prejudice, we need not consider counsel's alleged deficiencies in performance. *Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003). Therefore, we begin with the prejudice prong of the *Strickland* analysis.

## A. Prejudice

To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*; *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). In this case, Winborn must prove that he would either have been acquitted or received a more-favorable guideline range than was ultimately issued. We consider the prejudicial impact of each of Winborn's allegations in turn.

With respect to the first claim, Winborn must prove that that his confession would have been suppressed if defense counsel had made a pretrial motion *and* that, without the confession, the jury probably would have found him not guilty. Winborn neither alleges, nor offers any support, for this contention. To the contrary, Winborn emphasizes the uncertainty that a pretrial suppression motion would have succeeded. Appellant's Br. at 30 ("If the motion was successful, the defense to the charges would have been more effective, and the trial unquestionably could have seen a different result. If the motion was unsuccessful, prevailing at trial appears to be just

short of impossible, and it becomes clear that the plea must be seriously considered."). Any argument that the pretrial motion would probably have been successful and resulted in the exclusion of Winborn's confession is notably absent in his appellate briefing.

With respect to the second claim, Winborn must prove that if his wife had received a subpoena she would have testified at trial *and* that her testimony would have influenced the jury to find him not guilty. While Winborn might be able to prove the former, he fails to show the latter. *See* PageID 55 (the district court found that defense counsel never subpoenaed the witness, declined the court's offer to assist, and advised Winborn to acquiesce in his wife's decision not to testify). The district court previously deemed the proposed testimony irrelevant and inadmissible. Furthermore, even if admitted, it is unlikely to have influenced the jury. Based on the following facts, the failure to subpoena becomes immaterial.

As the district court recognized during trial, and in denying a motion to vacate the judgment on the basis of Winborn's wife's failure to testify, it is doubtful whether her testimony would have had any relevance. This is because Winborn's wife (1) "was not present when law enforcement executed a search warrant at [Winborn's] home," and (2) "would have no way of knowing the circumstances under which [Winborn's] statement was given at the . . . jail," and (3) "could not have testified concerning the effects of Hydrocodone intoxication" because she is not a medical expert. PageID 55. Furthermore, her own drug use and the presence of drugs in the house were not relevant to Winborn's charge of distribution. Therefore, the district court held that the proposed testimony of Winborn's wife would not have been admitted under Federal Rule of Evidence 401. It is also questionable whether the proposed testimony would have had any impact on the jury, given that it would (1) contradict Winborn's written statement that he

was not under the influence of drugs when he made his confession, and (2) come from a self-professed drug addict.

With respect to the third claim, Winborn must prove that defense counsel would have found exculpatory evidence if he had investigated further *and* that the new evidence would likely have resulted in an acquittal. Without identifying a critical piece of evidence which defense counsel overlooked, this is impossible to do. Winborn identifies no evidence—much less critical evidence—that defense counsel overlooked.

With respect to the fourth claim, Winborn must show that he would have pled guilty if his attorney had not stated that they could "beat this at trial" *and* that he would have received a sentence lower than 90 months. Winborn argues that if he had pled guilty, his sentencing guideline range would have been 121-151 months instead of 151-188 months—which was ultimately reduced to 90 months—and the corresponding reduction would have resulted in a sentence below 90 months. The sentencing transcript reveals that the downward variance from the 151-188 month range was due to factors such as Winborn's care of his children, his commendable work record, and his potential for rehabilitation. PageID 235-36. But Winborn neither suggests nor shows that those factors may be quantified in objective terms; nor that doing so would result in a proportionate downward variance from the 121-151 month guideline range.

We may accept, at face value, Winborn's assertion that he would have pled guilty; however, since the downward variance was discretionary and the trial judge has said she was unlikely to issue a different sentence regardless of a plea agreement (*see* PageID 203), we see no viable remedy for Winborn even if we were to grant him relief on this issue. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1389 (2012). Accordingly, we find that none of the alleged performance deficiencies resulted in prejudice to Winborn's case.

B.  Deficiency

Even if Winborn can show prejudice, he fails to meet the first prong of the *Strickland* test on all his claims. First, defense counsel was not deficient for failing to challenge the admission of Winborn's confession.  The record suggests that defense counsel did challenge that admission by (1) showing the jury a photograph of Winborn's physical appearance when he made his confession that was intended to demonstrate he was so drugged that he "would have signed a confession to killing Jimmy Hoffa" (PageID 346),  (2) questioning police about Winborn's condition during the confession, and (3) planning to call Winborn's wife to testify that he was under the influence of drugs during the confession.  Winborn argues that this is insufficient and that defense counsel should have filed a pre-trial motion to suppress the confession entirely.  We disagree.  Winborn may believe that his counsel could have done even more.  However, we do not second guess defense counsel in their representation, barring an indication that their representation was so wholly inadequate as to be unconstitutional.  *See Strickland*, 466 U.S. at 689; *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000) (internal quotation marks omitted) (explaining that the "presumption of effective assistance of counsel" is difficult to overcome).

Second, it may be true that a timely subpoena would have increased the chances that Winborn's wife would have appeared and testified at trial; however, defense counsel ultimately decided against issuing a subpoena, which was a tactical decision that we must respect. *Strickland*, 466 U.S. at 689-90.  Initially, defense counsel believed Winborn's wife was a necessary witness and did attempt to secure her cooperation and to enlist the district court's help in doing so.  However, Winborn's wife decided, after consulting her own attorney, against testifying, and defense counsel chose not to issue a subpoena forcing her to testify.  In the

absence of any evidence to the contrary, we must presume this is a matter of professional judgment and sound strategy. *See id.*

Third, Winborn argues that there is no evidence to suggest that defense counsel researched the confession issue, interviewed any possible witnesses, or explored any potential defenses to the charge. Typically, such evidence does not make its way into the record. Moreover, defense counsel's statements at trial suggest that he *did* research the confession issue, he *had* explored potential defenses, and he *did* intend to call necessary witnesses. *See* Page ID 244, 346.

Fourth, Winborn's defense counsel did not misrepresent Winborn's chances of success at trial—his representation that Winborn would have a better outcome than the 121-155 month sentence proposed under the plea offer was proven to be accurate when Winborn received a 90-month sentence after trial.

## IV.

Relying on our decision in *Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007), Winborn argues that the district court abused its discretion in denying an evidentiary hearing. "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Id.* at 333 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). We disagree that *Valentine* is similar to this case. In *Valentine*, the Government allegedly offered the petitioner a ten-year plea deal, which he did not immediately accept on his attorney's advice. *Id.* The petitioner received 292 months at sentencing. *Id.* In the instant case, Winborn was offered 121-151 months in a plea agreement and received a *lower* term of 90 months at sentencing. Furthermore, unlike in *Valentine*, there is no factual dispute in the instant case. *See Amr v. United States*, 280 F. App'x 480, 485-86 (6th

Cir. 2008) (holding that a prisoner was not entitled to a hearing on an ineffective-assistance-of-counsel claim where the claim was conclusively refuted by the record). Accordingly, the district court was not required to grant a hearing on Winborn's motion.

V.

For the foregoing reasons, we **AFFIRM** the district court's denial of Winborn's motion to vacate and its disposition of the underlying ineffective-assistance claim.