**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0317n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 24, 2014
DEBORAH S. HUNT, Clerk

No. 13-5606

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| BRIAN DOUGLAS SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**OPINION**

**Before:** **MOORE and COLE, Circuit Judges; DRAIN, District Judge.**[1]

**GERSHWIN A. DRAIN, District Judge**. In this appeal, Defendant Brian Douglas Smith appeals the 151-month custodial sentence and 20-year term of supervised release with special conditions imposed after he pled guilty to Distribution of Child Pornography. For the reasons that follow, we **AFFIRM**.

**I. BACKGROUND**

In November of 2012, Smith entered into a plea agreement for Distribution of Child Pornography under FED. R. CRIM. P. 11. The presentence report provided a guidelines range of 151 to 188-months of imprisonment and 5-years to life for supervised release.

_____

[1] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

-1-

Prior to sentencing, Smith requested a downward departure based on his mental condition, including depression, stemming from childhood sexual abuse, as well as due to numerous physical ailments, including hypoglycemia, diabetes, arthritis, degenerative disc disease and the need for double knee replacement surgery. Smith relies on numerous prescription drugs for mood disturbance and pain management. A Bureau of Prisons ("BOP") psychologist who evaluated Smith's competency found that he was emotionally distressed, complained of chronic pain, made demands for psychotropic medication and told the psychologist that he wanted "treatment to address issues related to his childhood." The psychologist recommended psychotherapy and participation in a sex offender treatment program "to determine the level and degree of Mr. Smith's sexual interest in children and whether a diagnosis of Pedophilia is warranted."

On March 21, 2013, the district court conducted sentencing proceedings. The district judge first determined that the guidelines range had been properly calculated in the presentence report. Neither the government nor Smith objected to the guideline calculations. Given Smith's cooperation, the government recommended a sentence at the low end of the guidelines range, specifically requesting a sentence of 151-months in custody and 15-years of supervised release. Smith reiterated his request for a downward departure.

The court denied Smith's motion for a downward departure. Smith's request was made pursuant to U.S.S.G. § 5H1.3, which relates to mental and emotional conditions, and § 5H1.4, which relates to physical issues. The district court judge recognized that Smith struggles from mental and emotional challenges, but concluded that such conditions are not unusual in these types of cases and Smith's case is not severe enough to warrant departure. Next, the district court opined that when considering physical conditions warranting departure under § 5H1.4, the court requires "some kind

of very unusual situation that distinguishes this case from other defendants." The district judge agreed that Smith struggles with numerous physical ailments but found his condition could be adequately addressed by the BOP system.

The district court then conducted a thorough analysis of the sentencing factors and their application to Smith's crime and circumstances. The district judge first considered the recommended sentence. The court noted that there is a stiff penalty in these types of cases because of the public policy recognition that the resulting damage to the community and victims is substantial. The district judge acknowledged that there were a number of victim impact letters provided in this case and that the Guidelines included a reduction for Smith's acceptance of responsibility. The court further noted that the supervised release recommendation is different in this case, as it covers the wide span of 5 years to life. However, the court recognized such supervision can be beneficial for a significant period of time because of the accountability that a probation officer can provide.

Next, the court considered the seriousness of the crime. The court emphasized the continuing victimization that results from putting pictures on the Internet. The district court opined that:

> [O]ne of the ways that we can promote respect for the law, particularly for individuals that have to make that decision to reflect the law, sometimes in the confines of their home in the privacy of their home with nobody else around is to impose substantial sentences, and also to deter future conduct, people need to understand consequence of engaging in this particular behavior.

Consequently, the district court noted that it must consider the need to protect the public from future crimes, and that the sentence imposed will provide Smith an opportunity to receive treatment for his mental conditions. While the district court recognized that Smith is committed to living differently,

-3-

it further emphasized that punishment is about more than remorse and Smith still owes society a debt for his actions.

The district court also discussed the nature and circumstances of Smith's offense, particularly the substantial number of videos and images involved. The court noted that Smith's history and characteristics were mitigating factors to consider, however it stated:

> I don't hold you accountable for things that happened when you were a young child...[b]ut I have to hold you accountable for the way you responded to that and the decisions you made as an adult. And you're coming a little bit late to trying to finally deal with that and address that and I think you're beginning to do that, and I'm going to give you some credit for that.

The district court ultimately concluded that a significant period of incarceration and supervised release were necessary. The court sentenced Smith to 151-months in custody, during which time it required him to participate in mental and emotional health counseling and/or available substance and sex offender treatment programs. Following Smith's imprisonment, the district court ordered 20-years of supervised release, with the caveat that after 10 years a hearing will be held to determine whether or not the restrictions need to continue. The court emphasized that Smith's case and circumstances warranted a sentence at the bottom of the recommended guidelines.

Additionally, the district court ordered several special conditions to Smith's supervised release including his participation in mental health and substance abuse programs and periodic drug and alcohol testing, random searches of his person or possessions at the discretion of his probation officer, reporting all use of prescription medications and providing access to his financial information, participation in a program for treatment of mental health sexual disorders, and limitations on his contact with minors, possession of pornography, electronic equipment, and on renting a post-office box or storage facility. Neither party had any objections to the sentence.

## II. DISCUSSION

### A.

We review sentences for procedural and substantive reasonableness. *United States v. Collington*, 461 F.3d 805, 807-08 (6th Cir. 2006). A sentence is procedurally unreasonable if the court committed serious procedural error "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). A sentence is substantively unreasonable if the district court "selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

### B.

Smith argues that the district court erred by imposing a 151-month custodial sentence. This Court reviews Smith's claims of procedural unreasonableness for plain error because he failed to raise any objections to the sentence at his hearing after the district court invited him to do so. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008). A finding of plain error requires that the moving party show "(1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Inman*, 666 F.3d 1001, 1003-04 (6th Cir. 2012) (citing *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010)). "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [he] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). However, the "mere failure

[of the lower court] to fully *explain* the extent of its consideration of sentencing factors" is not enough to constitute plain error. *United States v. Houston*, 529 F.3d 743, 751 (6th Cir. 2008) (emphasis in original).

We find that no error occurred in the instant matter because the district court "considered the parties' arguments" and provided "a reasoned basis" for Smith's custodial sentence. *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008). Smith argues that the district court committed error by failing to address his arguments that a downward variance[2] would be appropriate given Smith's acceptance of responsibility, timely plea agreement, outstanding emotional and physical issues, and the sexual abuse he experienced as a child. However, the record demonstrates that the district court recognized that Smith's mental and physical conditions were "clearly present," but "not to an unusual degree in these kinds of cases" and not "to the extent that departure would be warranted." Contrary to Smith's arguments, the district court properly considered the § 3553(a) factors. While the district court could have addressed Smith's physical and mental conditions more extensively, we conclude that the district court was aware of them, was cognizant of their role in a § 3553(a) analysis, and incorporated them into the sentencing decision. Although the district court rejected Smith's request for a downward departure or a Guidelines variance, it did find that Smith's history and characteristics warranted a sentence at the lower end of the recommended Guidelines range.

With respect to the substantive reasonableness of the sentence, Smith bears the burden of showing that the district court abused its discretion. *See United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011). Because Smith's sentence is within the Guidelines range, this Court presumes that the sentence is reasonable. *Vonner*, 516 F.3d at 389; *see also United States v. Cunningham*, 669

---

**2** Defense counsel did not file a written motion for a section 3553(a) variance, but argued during sentencing that the court should grant a variance.

F.3d 723, 733 (6th Cir. 2012) ("Defendant bears a heavy burden in showing that his sentence at the low-end of his Guidelines range is unreasonable."). When reviewing sentences for substantive reasonableness, the appropriate inquiry is not whether the district court "could" have awarded a lower sentence, but "must" it have done so. *United States v. Smith*, 516 F.3d 473, 476, 478 (6th Cir. 2008).

Smith argues that his sentence is substantively unreasonable for three primary reasons: (1) the district court improperly lengthened his sentence so that he could obtain rehabilitative treatment in prison, (2) the court failed to give adequate weight to positive sentencing factors, and (3) the court gave too much weight to the advisory guidelines range. First, Smith's argument that the district court based the length of his sentence on the completion of a rehabilitative treatment program lacks support in the record. While the district court alluded to Smith's mental health and stated that he would benefit from rehabilitative treatment, such statements are not enough to conclude that the court improperly lengthened the sentence to enable completion of a treatment program. *See United States v. Tolbert*, 668 F.3d 798, 803 (6th Cir. 2012); *see also Tapia v. United States*, 131 S. Ct. 2382, 2393 (2011).

Second, the district court gave adequate weight to Smith's positive sentencing factors. The fact that Smith was sentenced at the bottom of the Guidelines range suggests that the district court sufficiently considered the positive factors of Smith's cooperation with the police and timely plea agreement. It is beyond the scope of an appellate court's review to simply balance the § 3553(a) factors differently than the lower court. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). While the positive factors might support a lower sentence, "they do not compel one, and that is all we have license to consider." *United States v. Overmyer*, 663 F.3d 862, 864 (6th Cir. 2011).

Finally, the district court did not place too much weight on the advisory guidelines range. "The applicable Guidelines range represents the starting point for [a] substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration most, if not all, of the other § 3553(a) factors." *United States v. Peppel*, 707 F.3d 627, 635 (6th Cir. 2013) (citing *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008)). The fact that a district court may depart from the Guidelines because of policy reasons does not mean that they must. *See United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011).

Smith heavily relies on a comment made by the district court judge concerning the "fairness" of the Guidelines. However, not only does an appellate court "not presume to read the mind of a sentencing judge, on a search for impropriety," but the district court used the term during his discussion of the need to avoid unwarranted sentencing disparities, and his recognition that it is well-settled that a sentence within the Guidelines furthers the goal of reducing disparities. *United States v. Guthrie*, 557 F.3d 243, 256 (6th Cir. 2009). "[O]ne of the fundamental purposes of the Guidelines is to help maintain national uniformity in sentences, and considering that most sentences are within the Guidelines, the Guidelines themselves represent the best indication of national sentencing practices." *United State v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). The district court did not presume the Guidelines were reasonable. Instead, after thoroughly reviewing Smith's history and the circumstances of his crime, the court determined that a 151-month term of imprisonment was "sufficient, but not greater than necessary" to comply with the statutory sentencing purposes. In light of the totality of the circumstances, the district court did not abuse its discretion in imposing a 151-month custodial sentence.

**C.**

Smith also argues that the conditions of his supervised release constitute plain error. Under 18 U.S.C. § 3583(d), a district court may impose special conditions of supervised release so long as they are "reasonably related to the dual goals of probation, the rehabilitation of the defendant and the protection of the public." *United States v. Brogdon*, 503 F.3d 555, 563 (6th Cir. 2007). To satisfy the requirement of procedural reasonableness, a district court must state its rationale for mandating special conditions of supervised release. *United States v. Dotson*, 715 F.3d 576, 583-84 (6th Cir. 2013). "[W]hen imposing a condition of supervised release, a district court's consideration of the § 3553(a) factors sufficient to justify a term of incarceration as procedurally reasonable can also demonstrate that the imposition of special conditions is procedurally reasonable." *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

As with custodial sentences, if the district court asks the defendant whether or not he has any objections to the terms or length of the special conditions applied to his supervised release and he says "no," the appellate court may review the procedural reasonableness of the special conditions only for plain error. *Zobel*, 696 F.3d at 572-73. However, even if a defendant preserves an error by objecting to a condition, an error simply based on a lower court's inadequate explanation of the condition would be harmless "if the supporting reasons are evident on the overall record, and the subject special condition is related to the dual major purposes of probation, namely rehabilitation of the offender and enhancement of public safety." *Brogdon*, 503 F.3d at 564 (citing *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001)). Additionally, *United States v. Doyle*, 711 F.3d 729, 734 (6th Cir. 2013), established that a district court's failure to explain its reasons for imposing special conditions is harmless "if the record clearly shows why the district court imposed the conditions that it did."

In *Doyle*, the district court committed a procedural error when it failed to explain its reasoning for imposing four special conditions of supervised release. *Doyle*, 711 F.3d at 734. Doyle was charged with failing to register as a sex offender. *Id*. at 731. This Court determined that forbidding Doyle from "possessing any pornography or calling a sexually-oriented phone number or service [did] not reasonably relate to the offense for which he was sentenced." *Id.* We also found that such a condition could not be upheld without an explanation from the lower court as to why it imposed the restriction. *Id*. However, *Doyle* recognized that in a situation where the special conditions of supervised release or probation "are reasonably related to the twin goals of probation: rehabilitation of the defendant and the protection of the public," and the record, as a whole, shows the appropriateness of the special conditions, then a district court's failure to explain its reasoning for applying the special condition amounts to only harmless error, making remand unnecessary. *Id*. at 734-35 (citing *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). In *United States v. Berridge*, 74 F.3d 113, 119 (6th Cir. 1996), the defendant pled guilty to making false statements on a loan application while working for a bank. *Id*. at 114. The district court imposed, without stating a reason on the record, a special condition of supervised release that prevented him from any future work in the banking industry. *Id*. We held that remand was unnecessary even though the district court failed to state its reasoning because the error was harmless. The reason for imposing the employment restriction was clear from the record and met both goals of probation. *Id*. at 119.

Moreover, a sentencing error does not affect substantial rights unless a reasonable probability exists that the defendant would have received a more favorable sentence in absence of the error. *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). In the instant case, Smith cannot show that any error affected his substantial rights. Instead, the district court either provided an adequate

explanation of its reasoning for the special conditions on the record, or the lack of an explanation constitutes harmless error under *Doyle* rendering remand unnecessary.

**1.**

Several of the special conditions that Smith argues the district court failed to explain are adequately supported on the record contrary to his contentions. First, as to the restriction of Smith's contact with minors, the district court stated that its primary reasoning behind this condition was "the content of the images, [and] the significant number of images that were involved in this particular case." Although there is no evidence that Smith had any inappropriate contact with minors before his arrest, the district judge opined that his "concern is that when someone is struggling with [child pornography] and receives [a] restriction...than there's a greater concern [for inappropriate contact] and that grows in terms of possible contact that could occur in terms of a minor."

The district court's concern about Smith being around children following his release is appropriate. The psychologist who evaluated Smith for trial recommended that Smith attend a sex offender treatment program to determine "whether a diagnosis of Pedophilia is warranted." One of the permissible reasons for establishing special conditions under § 3583(d) is to "protect the public." Although Smith has not yet been diagnosed with pedophilia, the district court properly relied on the psychologist's concern over Smith's past behavior to determine that such a condition is necessary. Smith's probation officer may later alter the constraints of this restriction if appropriate.

Smith relies on *United States v. Widmer*, 511 F. App'x 506 (6th Cir. 2013), and *Doyle*, *supra*, however his reliance is unfounded. In *Widmer*, the defendant pled guilty to knowingly receiving child pornography, but never solicited or physically harmed any children. *Id.* at 508. We concluded that there was no obvious rationale for imposing a restriction barring Widmer from having contact

with minors, particularly when the limitation kept him from his own daughter. *Id*. at 513. Applying the abuse-of-discretion standard of review, we concluded that "a fuller explanation" of the court's special restriction reasoning was needed because "the record lacks an obvious rationale for imposing the restriction." *Id*. at 512-13.

However, there are several significant distinctions between *Widmer* and the instant case. Most notably, Smith has pled guilty to a more serious and pervasive crime - distributing child pornography, the restriction will not bar contact with his child, and the district court provided an explanation to support its reasoning. Smith's reliance on *Doyle* is also unfounded, as the *Doyle* court emphasized that the special restriction requiring the defendant to refrain from contact with minors was inappropriate because it barred him from having contact with his four children. *Doyle*, 711 F.3d at 735. Smith's child will be over the age of 18 at the time of his release and this condition will not interfere with his contact with her.

Second, the district court explained that the restriction from pornography and sexually-stimulating performances was based on the fact that Smith admitted to viewing pornography for the last 20 years and the vast amount of pornography, particularly child pornography, that was involved in this case. Although Smith argues this restriction is over-broad and would prevent him from certain activities (i.e., visiting the corner store where Playboy and condoms are sold), he assumes the probation officer will interpret the restriction in this narrow manner, and fails to appreciate the Court's ability to clarify its restriction. *See* 18 U.S.C. § 3583(e)(2). Furthermore, in *Doyle*, the court recognized that forbidding an individual from possessing pornography or calling a phone-sex number might aid in the rehabilitation of an individual who pled guilty to the distribution of child pornography. *Doyle*, 711 F.3d at 734. Assisting in the rehabilitation of the offender is a permissible reason for the district court to impose a special condition. Plain error occurs only in exceptional

-12-

circumstances that lead directly to a miscarriage of justice. *Vonner*, 516 F.3d at 386; *see also United States v. Krimsky*, 230 F.3d 855, 858 (6th Cir. 2000). Smith fails to demonstrate plain error regarding the pornography restriction.

The district court also placed restrictions on Smith's ability to use a post office box or storage facility without the approval of his probation officer. Smith argues this restriction is unwarranted because he was never found with any hard copies of child pornography. However, the district court stated that experience has taught that while his current acquisition of child pornography is predominantly through the Internet, once his access is restricted, Smith could seek alternative means to serve his addiction (i.e. receiving child pornography through the mail). As such, the district court adequately explained its rationale for the imposition of its restriction.

The district court placed limitations on Smith's access to cameras, computers, and the internet, and subjected him to random searches of his computer system and storage devices. The district court recognized that Smith is "computer savvy" and that he viewed and distributed child pornography via the Internet. Moreover, the court permitted Smith's probation officer to expand Smith's access to computers and the internet over time, but there initially needed to be a secure monitoring system in place. Smith maintains that the search element of the aforementioned restriction is unnecessary because there is already a search and seizure special condition in place under his supervised release, permitting his probation officer to search any device based on reasonable suspicion that Smith has violated one of his conditions of release.

Smith argues his situation is analogous to the facts in *Inman*, wherein we concluded remand was required because the district judge failed to explain the special condition prohibiting the defendant from possessing any electronic devices capable of creating videos or pictures for the remainder of his life. *Inman*, 666 F.3d at 1005-07. Unlike the facts in *Inman*, the district court

-13-

explained that the search restrictions were needed because of the seriousness of Smith's crime, including distributing a significant amount of child pornography over the Internet. Likewise, although there is no evidence that Smith ever used camera equipment to produce child pornography, similar to the reasoning for the restriction placed on Smith's rental of a postal box, the district court identified its legitimate concern that Smith would seek other avenues to obtain child pornography when he could no longer access his computer or the Internet. The court reasonably lessened the impact of the restrictions by stressing that Smith's probation officer would have the flexibility to approve Smith's use of cell phones and computers, ensuring that the technological restriction would not prevent "legitimate professional pursuits or other activities that would contribute to [Smith's] rehabilitation." *United States v. Phillips*, 370 F.App'x 610, 621 (6th Cir. 2010).

The district court also gave Smith's probation officer access to his financial information. The court explained the financial restriction as "a means to allow the U.S. Probation Office to monitor purchases of electronic and peripheral devices, as well as any Internet services either subscribed to or accessed to by the defendant," in an effort to ensure that Smith is not purchasing any restricted materials. This restriction acts to deter Smith from violating his supervised release conditions, "protect[s] the public from additional crisis of the same nature, and ensure[s] that rehabilitation proceeds without hindrance." *United States v. Fredrick*, No. 9-53-GFVT, 2013 WL 1993294, *3 (E.D. Ky. May 13, 2013). While we have vacated a sentence with a similar restriction, the basis for our decision was that the district court had not explained why the intrusive condition was necessary. *See Inman*, 666 F.3d at 1106. Unlike the situation in *Inman*, the district court provided a specific reason for the restriction - to ensure that Smith was not violating his release restrictions by attempting to impermissibly subscribe to or access pornography. As such, Smith fails to establish plain error in permitting access to his financial information.

-14-

**2.**

Turning to the remaining restrictions, while we agree the district court should have more clearly articulated its reasons, the ultimate fairness and integrity of the proceedings were not compromised. The district court ordered Smith to participate in mental health and substance abuse treatment, submit to periodic drug and alcohol testing, and to inform the court about his prescription medications without stating its reasons on the record. However, the aforementioned conditions are directly related to protecting the public and assisting the rehabilitation process. Additionally, evidence to support the restrictions is clearly found in the record. *Doyle*, 711 F.3d at 734. The district court noted that protecting the public required "counseling" and dealing "with any substance abuse issues." Smith's history of substance abuse is evident from the record, including his medical history of extensive reliance on numerous prescription drugs. Furthermore, Smith was unable to confirm he was not addicted to his pain medications. Additionally, the psychologist who assessed Smith, recommended psychotherapy and sex offender treatment to determine whether or not Smith's interest in children established a diagnosis of pedophilia.

Lastly, mental health treatment bears a direct relation to Smith's offense - distributing child pornography. *Brogdon* 503 F.3d at 564. The district court stated that the required treatment is part of "a number of conditions that relate [to] the nature of this crime." As such, any error resulting from the failure to articulate the reasoning behind these restrictions was harmless.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of sentence.