**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0329n.06

Case No. 17-5981

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 05, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JAMES CHASE, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: COOK and DONALD, Circuit Judges; HALE, District Judge.[*]

**COOK, Circuit Judge.** Convicted of receiving child pornography, James Chase challenges a term of his supervised release conditions as impermissibly vague and overbroad. We disagree and AFFIRM.

## I. BACKGROUND

In 2008, Chase pleaded guilty to one count of receiving child pornography. The court sentenced him to 104 months' imprisonment, followed by a lifetime of supervised release. One proviso of his release mandates that he:

> [S]hall not possess, view, listen to, or go to locations where any form of pornography, sexually stimulating performances, or sexually oriented material, items, or services are available.

---

[*] The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

After his discharge from prison, Chase admitted to his probation officer that he violated the term of release by buying pornography. Within months of that infraction, Chase again got himself into trouble, watching a YouTube video of two naked individuals painting each other's bodies while rolling around in bed. The court sentenced him to seven months in prison and re-imposed lifelong supervised release, leaving the "sexually oriented material" provision unchanged. Chase contests this language's lawfulness, occasioning our review.

## II.    DISCUSSION

Because Chase never objected to his supervised release conditions before the district court, he forfeited any review beyond plain error. *United States v. Inman*, 666 F.3d 1001, 1003 (6th Cir. 2012). He must therefore show "(1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of his judicial proceedings." *Id.* at 1003–04.

District courts have "broad discretion to impose appropriate conditions of supervised release." *United States v. Ritter*, 118 F.3d 502, 506 (6th Cir. 1997). To qualify as "appropriate," a condition "must reasonably relate to the nature of the offense and the history and characteristics of the defendant" and must encompass "no greater deprivation of liberty than is reasonably necessary to serve the goals of deterrence, protecting the public, and rehabilitating the defendant." *Inman*, 666 F.3d at 1004 (quotation omitted); *see also* 18 U.S.C. § 3583(d)(2).

### A.  Vagueness

Chase first argues that his supervised release term is vague. Although he contends that the restriction's boundaries are unclear, Chase acknowledged at sentencing that watching the body-painting video violated the restriction. He nonetheless continues to insist that the video ought to

have passed muster as *art*. Essentially, he argues art—the Venus de Milo and Michelangelo's David, his examples—to be indistinguishable from pornography.

Yes, vagueness is unacceptable. *See, e.g.*, *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003) ("Because [a defendant]'s conditional freedom . . . hinge[s] upon his compliance with the condition[] prescribed, [it] must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972))). But as we noted in *United States v. Lantz*, we have no controlling precedent on "whether a ban on all pornography is impermissibly vague, and the circuits are split on the issue. It would therefore be inappropriate to find plain error in these circumstances." 443 F. App'x 135, 140–41 (6th Cir. 2011) (collecting cases); *see also United States v. Madden*, 515 F.3d 601, 608 (6th Cir. 2008). So too here.

## B. Overbreadth

Second, Chase argues that "sexually oriented" is overbroad because it encompasses literature, movies, and art. Even the Bible is off-limits, he suggests. Further, because his release term bars him from even "go[ing] to locations where any form of . . . sexually oriented material, items, or services are available," he maintains that he may not be able to visit a movie theater, library, art museum, or church. As he sees it, "the condition infringes on his fundamental First Amendment freedom to practice his religion and receive information."

Chase likens his restriction to those we invalidated for overbreadth under plain-error review in *United States v. Borders*, 489 F. App'x 858, 863 (6th Cir. 2012), and *Lantz*, 443 F. App'x at 141. *Borders* struck a condition that prohibited the defendant from "view[ing], listen[ing] to, or possess[ing] anything sexually explicit *or suggestive*." 489 F. App'x at 863 (emphasis added).

Similarly, *Lantz* held overbroad a condition barring material that "*alludes to* sexual activity." 443 F. App'x at 141 (emphasis added).

Problematic for Chase is that this restriction "reasonably relate[s] to the nature of [his] offense and [his] history and characteristics." *Inman*, 666 F.3d at 1004. After his first violation, the district court heard evidence from his treating psychologist that adult pornography is a "gateway" to underage content for child pornography addicts like Chase. The psychologist agreed that the totality of Chase's supervised release terms is "necessary and appropriate for his ongoing treatment." His probation officer likewise testified that Chase's addiction could be "triggered" by viewing adult pornography. From these facts—facts we recognize are peculiar to this particular defendant—it follows that preventing Chase from perusing "sexually oriented" material closely hews to the proscriptions that his offense, history, and characteristics necessitate.

The condition that Chase challenges may *sound* indistinguishable from those struck in *Borders* and *Lantz*, but distinguish it we can. Those provisions encompassed wide swathes of material only tangentially related to sexual arousal. *Borders* held that "[t]he words 'or suggestive' render that aspect of the special condition plain error." 489 F. App'x at 863. That's because "sexually suggestive" is "so expansive" that it "would cover the Bible and other religious texts, and a huge quantity of literature, music, and other media, and would thus infringe on Borders' First Amendment rights to receive information and to freely exercise religion." *Id.* (citations omitted). *Lantz* held that a restriction "that bans mere *allusion* to sexual activity is certainly overly broad." 443 F. App'x at 141. Why? The court explained that, under this condition, the defendant "arguably could not possess a television—which broadcasts *sexual allusion* in everything from afternoon soap operas through prime time 'drama'—or a radio—which subjects listeners to such

things as annoyingly persistent advertisements for 'male enhancement' products." *Id.* (emphasis added).

On the other hand, "sexually oriented" is more tightly focused, more circumscribed, than the *Borders* and *Lantz* terms. The Bible might "allude to" sexual activity because it mentions sexual relations, but it isn't a "sexually oriented" book—its primary purpose is theological, not sexual. Michelangelo's David might be "sexually suggestive" because it stands naked, but it isn't a "sexually oriented" 500-year-old marble statue—its focus is depicting strength and beauty in the face of danger, not sexually tantalizing the observer. And Venus de Milo might be "sexually suggestive" because it is topless, but it isn't "sexually oriented"; as the district court aptly observed, "Venus de Milo is not two people rolling around body painting in bed."

Plus, that something is "sexually suggestive," as in *Borders*, or "alludes to" sexual activity, as in *Lantz*, does not mean it is likely to trigger the downward spiral to child pornography addiction that courts have a justified interest in preventing. Indeed, *Borders* doubted that a restriction as expansive as "sexually suggestive" could be "tied to the purpose of the sentencing factors." 489 F. App'x at 863. So did *Lantz*. 443 F. App'x at 141 ("[T]his restriction is so broad that it seems to have little to do with any of the sentencing factors."). We think the language at issue in *United States v. Smith*, 564 F. App'x 200 (6th Cir. 2014), presents a better parallel. In *Smith*, we held that a supervised release condition banning "pornography and sexually-stimulating performances" was not overbroad under plain-error review. *Id.* at 207–08. There, as here, the condition cabined the restricted content to material that could interfere with "the rehabilitation of [an] offender." *Id*. Given *Smith*, which was decided after *Lantz* and *Borders*, we do not conclude that including the "sexually oriented" term in Chase's supervised release conditions amounted to an obvious error.

Like the *Smith* defendant, Chase "assumes [his] probation officer will interpret the restriction" to prohibit a wide range of activities and material, such as reading the Bible or going to a library. *Id.* at 207. To be sure, we do not read it so expansively, and if problems do arise, we have faith in the district court's "ability to clarify its restriction." *Id.* (citing 18 U.S.C. § 3583(e)(2)). The court emphasized that Chase, when in doubt, may consult his probation officer or counselor. We likewise encourage him to avail himself of those resources.

## III. CONCLUSION

For these reasons, we AFFIRM.

**BERNICE BOUIE DONALD, Circuit Judge, concurring in the judgment.** I write separately to respectfully express my concern over the majority's approach to the issue of whether "sexually oriented material, items, or services" is overbroad. Narrowly construing "sexually oriented materials" offers a practical solution for resolving the somewhat ambiguous language in this defendant's case.[1] However, I have reservations about shying away from an objective reading of the conditions language in favor of a more subjective, limiting construction of the conditions language where First Amendment rights are concerned. *See United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012) ("Bans on explicit material involving adults certainly raise First Amendment implications . . . and are thus 'subject to careful review.'") (citations omitted).

In my view, "sexually oriented" is facially broader than "pornography" or "sexually-stimulating performances." The majority likens "sexually oriented" to the language at issue in *United States v. Smith*, 564 F. App'x 200, 207-08 (6th Cir. 2014), but I am not persuaded that *Smith* constitutes a fitting parallel for this case. *Smith* rejected an overbreadth challenge to conditions barring "pornography and sexually-stimulating performances." *Id.* The defendant in *Smith* presented no First Amendment challenge but rather challenged his inability to go to the corner store where condoms and Playboy magazines were sold. *Id.* Conversely, the restrictions here—when viewed without the majority's narrow construction—present potential constitutional difficulties. Moreover, Chase's restrictions contain condition language otherwise barring "any form of pornography" and "sexually stimulating performances," terms that are identical to the language at issue in *Smith*. It follows that "sexually oriented material, items, or services" is

---

[1] For instance, I agree that it is unlikely that Chase's condition will be interpreted by his probation officer or a district court to restrict such a wide range of activities or material, as Chase alleges.

materially different from either pornography or sexually stimulating performances, or else the language would be impermissibly redundant. *See United States v. Antelope*, 395 F.3d 1128, 1141-42 (9th Cir. 2005) (rejecting government's contention that "sexually oriented or sexually stimulating materials" should be read as "pornographic" where the condition already contained a pornography ban that would make such a reading redundant).

Nevertheless, with the majority's more limited definition, the condition barring "sexually oriented material, items, or services" applied here does not amount to plain error. This is particularly true when taken with the majority's well-supported conclusion that there is ample evidence to underpin Chase's prohibition from engaging with material, items, or services that have a "primary purpose" of "sexually tantalizing the observer." I do not dispute the significance of preventing access to materials that are tied to Chase's likelihood to reoffend. I remain concerned that redundant conditions, such as this one, *could* be interpreted in a manner much broader than the majority's interpretation—in a way that is violative of the First Amendment.

Although a common-sense narrowing approach may be appropriate here, I urge district courts to opt for greater specificity and clarity when imposing special conditions in these sorts of cases. *See United States v. Schultz*, 733 F.3d 616, 624 (6th Cir. 2013) ("[W]e cannot hide from insisting on narrower supervised release conditions when necessary or construing such conditions narrowly when appropriate."). I concur in the outcome reached by the majority.